## BURNS et al. v. CHICAGO, M., ST. P. & P. R. CO.

### No. 6320.

United States District Court
W. D. Missouri, W. D.

Feb. 5, 1951.

Clay C. Rogers, Lyman Field, Reed O. Gentry and Jack B. Robertson, Kansas City, Mo., for plaintiffs.

Robert L. Hecker, William M. Symon, Jr., Kansas City, Mo., for defendant.

RIDGE, District Judge.

On motion of defendant for summary judgment, premised on the ground that the freight claim loss here sued on is barred by the provisions of Section 20(11), Title 49 U.S.C.A., and by the terms of the bill of lading applicable to the shipment of certain live stock from Two Dot, Montana, to Clearing Stock Yards, Illinois, on October 4, 1947, the following undisputed facts appear of record herein. After arrival of such live stock at Clearing Stock Yards, plaintiffs, on October 17, 1947, made claim against defendant, through their duly authorized agent, Chicago Live Stock Exchange, for damages occurring thereto, in the sum of $3,128.97. After consideration of said claim, defendant, acting through its Freight Claim Agent, on December 1, 1947, sent the following letter to the Chicago Live Stock Exchange:

"Your claim 107–84 presented in behalf of Mr. Robert C. Burns.

"From investigation conducted, we have not been able to conclude that transportation handling is answerable for extra feeding expense at Clearing Yards or a market decline loss which item, incidentally is not supported with detailed account sales.

"Shipment was handled under available service, the 'range' or one feed schedule not being in force and our Agent at Two Dot is emphatic that he is not to blame for shipper's choice in letting stock go forward when it did, rather than holding cattle for faster service going into effect Oct. 8th.

"Shortage of one animal was occasioned by it being held at Aberdeen. This steer because of wildness, became unmanageable and was left behind; we selling it later for $222.00. On this animal and on the cripple noted at time of unloading of stock at Clearing, we can make the usual settlement, the cripple at destination being sold for $15.00.

"This would make the amount due on the claim something like $450.00 for which voucher can be prepared immediately, the balance of the loss being respectfully disallowed."

December 23, 1947, the Chicago Live Stock Exchange acknowledged receipt of the above letter, as follows:

"This will acknowledge receipt of your favor of December 1st in connection with your claim 698345–22 our claim 107–84 in favor of Mr. Robert C. Burns of Kansas City, Mo.

"It is greatly to be regretted that you have seen fit to decline this claim that seems so clearly meritorious, and upon which fairly a substantial amount should be paid.

"Mr. Burns has very properly decided to place the claim in suit, and has engaged the law firm of Messrs. Mosman, Rogers, Bell & Field, 904 Bryant Building, Kansas City 6, Mo.

"We would therefore greatly appreciate your kindness in forwarding the papers submitted to you in support of this claim, including the original affidavit and the original live stock contract to Mr. Lyman Field, % the law firm at the address shown.

"If you will also kindly close your files, so far as this department is concerned, and handle the matter if you please with Mr. Field  *  *  *"

The "Uniform Live Stock Contract" relating to the shipment in question contains the following provisions: " *  *  * suits shall be instituted against any carrier only within two years and one day from the day from which notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where the claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid."

In April of 1948, counsel for plaintiffs opened correspondence with defendant's Freight Claim Agent, informing defendant they had been "instructed to institute suit (on plaintiffs' claim) but before doing so, (they) would be pleased to discuss (the) matter with a representative of defendant in an attempt to avoid needless litigation." Thereafter, a conference was held between said counsel and a representative of defendant. August 6, 1948, defendant's Freight Claim Agent sent the following letter to said counsel:

"Our Traveling Agent, Mr. Ducret called on you April 27, 1948 regarding claim of Robert C. Burns involving shipment livestock billed from Two Dot, Mont., last October. According to his report, we understand you would secure further information and proof from your client but to date, have received nothing further.

"As our investigation indicates no carrier liability and in order to protect our company by provisions in the livestock contract, we are obliged to advise that claim is respectfully disallowed. We might further add that claim on this shipment was previously presented with our company by the Chicago Live Stock Exchange and was also disallowed to that Exchange Dec. 1, 1947."

Subsequent to the writing of the last-mentioned letter, and prior to December, 1949, several other conferences were held, and further correspondence passed between counsel for plaintiffs and the Freight Claim Agent of defendant, looking to a compromise of said claim. January 10, 1949, counsel for plaintiffs had a telephone conversation with defendant's Freight Claim Agent, after which the latter wired said counsel: "Re Burns claim necessary to handle law department will advise further as soon as possible." March 2, 1950, defendant's law department informed plaintiffs' counsel that in light of the fact that on December 1, 1947, it had "allowed (plaintiffs') claim in the sum of $450.00 and the balance was disallowed without any equivocation," they were of the opinion that the period of limitation having run so as to then bar plaintiffs' claim, defendant was powerless to make any settlement of said claim because of the mandate of the Interstate Commerce Act. 49 U.S.C.A. §§ 1, 3, etc. Thereafter, complaint was filed herein on March 31, 1950, seeking recovery against defendant on the above-referred-to claim.

The matter to be resolved under the foregoing state of facts is whether the limitation period within which suit could be brought on the instant freight claim began to run as of December 1, 1947, or from August 6, 1948, in light of the written notices so given and the provisions of Section 20(11), Title 49 U.S.C.A., and the above-set-forth terms of the "Uniform Live Stock Contract," controlling the shipment in question. If the earlier date governs then the claim here sued on was barred at the time of the filing of the complaint herein. If the latter, then plaintiffs may maintain this action. To avoid the consequences of the running of the limitation period herein, plaintiffs contend that the letter of December 1, 1947, stating as it does that defendant considered "the amount due on the claim something like $450.00," and that "the balance of the *loss* being respectfully disallowed," was not tantamount to a final declination of the claim plaintiffs made against defendant, under the above-referred-to statute and contract, so as to satisfy the requirement of notice thereof as therein provided and commence the running of said limitation period. Plaintiffs further assert that use by defendant of the term "loss" instead of the word "claim" in said letter also makes manifest that the defendant did not intend said letter to be a final declination of its claim.

The parties are in agreement that under the provisions of Section 20(11), Title 49 U.S.C.A., and the terms of the Uniform Live Stock Contract, supra, plaintiff must have instituted this action within "two years and one day from the day from which notice in writing" was given by defendant "that the carrier has disallowed the claim or any part or parts thereof specified in the notice." Consequently, the only matter we need consider in determining whether such limitation period had run when the instant action was instituted, is, what is the legal effect to be given to the letter of December 1, 1947, supra? Both parties contend in

their briefs before the Court that said letter is unambiguous in all of its terms, and we quite agree. Therefore, the construction and legal effect to be given to said letter may be resolved by the Court from a consideration of the wording thereof, considered in the light of the provisions of Section 20(11), supra, and the aforesaid terms of the Uniform Live Stock Contract.

■ Said statute and contract cause the limitation period here considered to commence to run when notice in writing is given by a carrier that a claim has been "disallowed" in whole or in part. The word "disallowed" so used therein is not a term of art. A proper interpretation to be given thereto is that regardless of the form by which notice is given, so long as it is in writing, if the carrier makes known to a claimant that a claim made against it has been disallowed, then a claimant may be said to have been given adequate notice of disallowance of his claim so as to start the running of the period of limitation thereby set up. A. G. Reeves Steel Const. Co. v. Weiss, etc., 6 Cir., 119 F.2d 472; Gans S. S. Line v. U. S., D.C., 105 F.2d 955. In 13 C.J.S., Carriers, § 242, p. 498, where the text refers to the form and sufficiency of notice given under a limitation provision such as here considered, it is said: " * * * it is not necessary for the carrier to state in so many words, or in the language of the contract, that the claim is disallowed either in whole or in part; it is sufficient if the carrier uses such terms as convey to claimant the information that the claim is disallowed."

■ Did the letter of December 1, 1947, when received by plaintiffs and their agent, who presented said claim to defendant in their behalf, under the above facts convey to plaintiffs that their said claim had been disallowed by defendant within the intendment of Section 20(11), supra, and the provisions of the aforesaid Uniform Live Stock Contract? We think it did, regardless of the fact that defendant acknowledged liability to plaintiffs for a part of such claim in said letter and disallowed the balance of their "loss." That such is a fact is made apparent by the letter of plaintiffs' agent to defendant, acknowledging receipt of said notice. But, regardless of that acknowledgment, we think that the inevitable legal effect of said letter of December 1, 1947, was that it pointed out to plaintiffs that defendant was only acknowledging liability for a part of the claim they had made against defendant, and the balance of loss for which they were making claim was being disallowed. In a claim such as the instant one, liability of a carrier is limited to the amount of a claimant's loss. A denial by a carrier of "loss" in whole or in part is tantamount to a denial of the claim as made. Atlantic Coast Line R. Co. v. Wauchula T. Growers' Ass'n, 95 Fla. 392, 118 So. 52; Moses v. United States, 2 Cir., 61 F.2d 791. Therefore, said letter "was to all intent and purposes a disallowance of the claim" plaintiffs made against defendant and that seems to be the only conclusion that can be rationally apprehended therefrom. Jelke v. Smietanka, 7 Cir., 86 F.2d 470, 473.

Considering the contents of defendant's letter of December 1, 1947, in light of the claim previously made by plaintiffs against defendant; the interpretation given to said letter by plaintiffs' agent; and the subsequent statements of plaintiffs' counsel, that plaintiffs had authorized them to institute suit on said claim after receipt thereof by plaintiffs, we believe that it is clearly established in the instant case so as to permit of no equivocation that all parties hereto understood that when negotiations looking to a compromise of plaintiffs' claim were subsequently entered into, said letter was considered as having been a disallowance of plaintiffs' said claim by defendant. In a case where disallowance was less clearly stated than in this one, Tribby v. Chicago & N. W. Ry. Co., 64 S.D. 23, 264 N.W. 185, 186, the Court said, "True, defendant does not state in so many words, nor in the language contained in the bill of lading, that plaintiff's claim was disallowed either in whole or in part, but we think it is sufficient to convey the understanding that such was defendant's mean-

ing, and that it was so understood by the plaintiff is clear from the fact that he immediately commenced his action."

Plaintiffs urge that notice of disallowance once given pursuant to the provisions of Section 20(11), Title 49 U.S.C.A., and a Uniform Live Stock Contract such as here considered, may be revoked or waived by subsequent negotiations such as were carried on by the parties to the instant action so as to toll the running of a limitation period, citing Kinsey Distilling Corp. v. Pennsylvania R. R. Co., 166 Pa.Super. 466, 71 A.2d 802, 804. In the Kinsey case, supra, the Court said, "It is doubtful whether a carrier in an *interstate* shipment may waive the requirements of the bill of lading in regard to notice of claim and time within which to bring suit. (Cases cited.)"

In Blair-Baker Horse Co. v. A., T. & S. F. Ry. Co., Mo.App., 200 S.W. 109, it is held: "Where a shipping contract covering an interstate shipment of live stock provided that no action for damages should be sustained unless brought within six months, the carrier's right to rely on such provision of the contract could not be lost by waiver or estoppel, whether the acts relied on as constituting the waiver or estoppel were committed before or after the expiration of the six months, as the purpose of the commerce act is to absolutely destroy discriminations in interstate commerce no matter how conceived, or by what plan, scheme, or device they may be sought to be accomplished, and a discrimination would result from a waiver before the time limit had elapsed as well as by waiver after it had elapsed."

See also Texas & P. Ry. Co. v. Leatherwood, 250 U.S. 478, 39 S.Ct. 517, 63 L.Ed. 1096; L. M. Kirkpatrick Co. v. I. C. R. Co., 190 Miss. 157, 195 So. 692, 135 A.L.R. 607; Barber v. Southern Pac. Co., 51 N.M. 396, 185 P.2d 979; 13 C.J.S., Carrier, § 243, p. 504.

The limitation period having commenced to run from and after receipt by plaintiffs of defendant's letter of December 1, 1947, the running thereof could not have been tolled by any subsequent negotiations between the parties such as are here revealed.

It is apparent from the pleadings on file; stipulations made and exhibits agreed to at pre-trial conference, that no genuine issue of fact can possibly remain in issue between the parties as to the time of the commencement of the running of the period of limitation within which the instant action should have been commenced. As a matter of law, that time is clearly established to be as of the date plaintiffs' agent received copy of defendant's letter dated December 1, 1947. More than two years and one day had expired from that time when the instant action was instituted. Therefore, it is proper that summary judgment be entered herein, dismissing plaintiffs' complaint. Kithcart v. Met. Life Ins. Co., 8 Cir., 150 F.2d 997.

It is so ordered.