541 F.2d 1007
 POLAROID CORPORATION, a Delaware Corporation, Appellant,
v.
HERMANN FORWARDING CO., a New Jersey Corporation, Appellee.
POLAROID CORPORATION, a Delaware Corporation, Appellant,
v.
KOWALSKY'S EXPRESS SERVICE, a New Jersey Corporation, Appellee.
 Nos. 75-2308, 75-2309.
 United States Court of Appeals,
Third Circuit.
 Argued May 25, 1976.
Decided Sept. 1, 1976.
 
 Ravin, Davis & Mandell, Edison, N.J., Isaac M. Barnett, Donald S. Hecht, New York City, for plaintiff-appellant.
 Frederick J. Wortmann, Braff, Litvak, Ertag, Wortmann & Harris, Richard B. Livingston, Roy J. Konray, East Orange, N.J., for defendants-appellees.
 Before ADAMS, GIBBONS and HUNTER, Circuit Judges.
 JAMES HUNTER, III, Circuit Judge.
 
 
 1
 Plaintiff-appellant Polaroid Corporation entrusted two separate shipments of photographic goods to two common carriers for delivery in interstate commerce: one to defendant-appellee Hermann Forwarding Company ("Hermann") and the other to defendant-appellee Kowalsky's Express Service ("Kowalsky"). The shipments were hijacked and neither shipment was ever recovered. On April 23, 1973, Polaroid instituted the present action against Hermann and Kowalsky under 49 U.S.C. § 20(11) for damages sustained as a result of the loss by hijacking of the two shipments. The respective shipments were under uniform straight bills of lading approved by the Interstate Commerce Commission, which provided in pertinent part that "suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice." App. at 18a. The bill of lading is in conformity with section 20(11) of the Interstate Commerce Act, 49 U.S.C. § 20(11), which provides in part:
 
 
 2
 . . . it shall be unlawful for any such receiving or delivering common carrier to provide by rule, contract, regulation, or otherwise a shorter period for the filing of claims than nine months, and for the institution of suits than two years, such period for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice.
 
 
 3
 The primary issue presented is whether Polaroid filed suit on its claims within two years and one day from the date of written notice of disallowance of its claims.
 
 
 4
 The Hermann hijacking occurred on January 16, 1970 and the Kowalsky hijacking on November 10, 1970. Written notices of claims aggregating $58,941.83 were filed by Polaroid with Hermann on February 11, 1970; notices aggregating $131,168.95 were filed with Kowalsky on December 9, 1970. The timeliness of the filing of the claims is not disputed.
 
 
 5
 Transport Insurance Company ("Transport") insured both carriers and handled all communications with Polaroid concerning the claims. Polaroid's claim for $58,941.83 on the goods hijacked from the Hermann shipment represented the alleged dealer invoice price of those goods. On April 9, 1970, after preliminary letters had been exchanged between Polaroid and Transport, Transport informed Polaroid that it did not agree that Polaroid was entitled to the dealer invoice price, which included manufactured cost plus profit. The letter in pertinent part reads:
 
 
 6
 No doubt this shipment was reordered and your company received a profit on the reordered shipment. Your company would not be entitled to a double profit. Our obligation is to place your company in the exact same position it would have been if the loss had never occurred.
 
 
 7
 We would suggest that you resubmit your cargo loss claim not to include profit but to include only what you have lost. Your claim should include only your manufactured cost figures. We will await your comments.
 
 
 8
 App. at 68a. Polaroid responded on April 17, 1970: "It has also been requested that these claims be amended to our manufactured cost. . . . (W)e are not in a position to amend these claims to an amount less than dealer price." Id. at 69a.
 
 
 9
 Various letters subsequently passed between Polaroid and Transport concerning the proper measure of loss. On October 19, 1970, Transport wrote, regarding the Hermann claim:
 
 
 10
 We are not willing to accept your contention that you are entitled to the dealer's price on the basis you are simply acting on behalf of these dealers in settling the claims. You have not furnished us bills of lading as proof the shipments were effectively transferred to these dealers, nor have you furnished us anything in the way of proof that the dealers have paid you for the merchandise. Therefore, let's go back to the basics, which is the manufacturer's cost of the stolen merchandise.
 
 
 11
 On the basis of other claims we have had involving Polaroid, we are aware of the fact you add 54.9% operating cost to standard costs to determine what you consider manufacturing costs. On top of this you are adding on anywhere from 10 to 50% mark up on the dealer price, or an approximate average of one-third. In other words, you are between 30 and 60% above your actual loss in your demand of $58,710.30. In the spirit of compromise, however, we are willing to concede that the range is as low as 40% and are prepared to pay you $35,226.18 in settlement of the combined claims. We are therefore, enclosing a general release in like amount with the request that you have it properly executed and return to us. Immediately upon receipt of the release, we will issue our draft to Polaroid.
 
 
 12
 Id. at 78a. Enclosed with the letter was a "Release In Full of All Claims."[1]
 
 
 13
 On February 9, 1971, Transport responded to Polaroid's December 9, 1970, claim for the dealer invoice price of the merchandise hijacked from Kowalsky:
 
 
 14
 Our position on the above captioned matter (Kowalsky claim) is the same as our position in the case of Polaroid against Hermann Forwarding, your Claim Number 70-1000 thru 70-1019.
 
 
 15
 We are not going to pay you any more than the manufacturers cost. This represents about 60% of the total amount of your claim.
 
 
 16
 It doesn't appear that we are going to get any place in negotiating these claims by corresponding back and forth. We would prefer to set up a meeting with you, and anyone else in your company preferably representing your legal department to discuss these cases and possibly to at least work out settlements. If we can not settle we can not (sic) at least come to some understanding. We will await your advice.
 
 
 17
 App. at 115a.
 
 
 18
 Thereafter, various letters were sent between Polaroid and Transport concerning these claims. Some dealt with a case pending in the Eastern District of New York, Polaroid Corp. v. Long Island Delivery Company, No. 70C-1387 (E.D.N.Y., filed Oct. 12, 1971), in which the issue was whether dealer invoice price or manufactured cost was the proper measure for determining actual loss arising from a hijacked shipment.[2] On May 19, 1972, Transport wrote Polaroid regarding the Hermann claim:
 
 
 19
 You indicated that your cost figures on this loss amounts to $43,000.00 and that your company would accept nothing less than $46,800.
 
 
 20
 We refer you to our letter of October 19, 1970 wherein we made an offer to you in the amount of $35,226.18.
 
 
 21
 You never formally turned down this offer.
 
 
 22
 Accordingly, we are taking the position that this offer was a notice of disallowance of the claim and the statute is running.
 
 
 23
 This letter was sent five months before Transport believed that the action would be barred against Hermann.
 
 
 24
 Thereafter, on April 23, 1973, Polaroid filed the instant actions against Hermann and Kowalsky. Transport, on behalf of Hermann and Kowalsky, contended in the court below that Polaroid had been given legally effective notice of disallowance of its Hermann claim by its letters of either April 9, 1970 or October 19, 1970 and of the Kowalsky claim by its letter of February 9, 1971, and that accordingly, the respective actions were time barred.
 
 
 25
 The parties agreed and stipulated that the issue as to liability be submitted on depositions and documents as if on cross-motions for summary judgment, with the damage issue to abide the determination as to liability. App. at 7a, 14a, 19a.
 
 
 26
 On June 18, 1975, the district court granted summary judgment in favor of Hermann and Kowalsky and against Polaroid. The court held, "(I)t is clear that at the very latest, the February 9, 1971 letter constituted notice of partial disallowance sufficient to begin the running of the limitation period in question as to both defendants." App. at 22a-23a (emphasis in original). Thereafter, Polaroid filed a timely motion to vacate the grant of summary judgment and for reargument pursuant to rule 59 of the Federal Rules of Civil Procedure, which motion was denied by the district court on September 8, 1975. Polaroid has appealed from both the order granting summary judgment in favor of appellees and the order denying the motion to vacate judgment and for reargument. Because we conclude that the district court did not err in granting summary judgment in favor of appellees on the basis that the actions were time barred and in denying the motion for vacation of judgment and reargument, we will affirm.
 
 
 27
 Under 49 U.S.C. § 20(11) and the uniform bill of lading, a claimant must file suit within two years and one day from the date of written notice of disallowance of its claim in whole or in part. Where a claim has been disallowed in part and suit has not been filed within the prescribed period, the entire claim, not simply the disallowed portion, is barred. 49 U.S.C. § 20(11); see H. Rouw Co. v. Texas & N. O. R.R., 260 S.W.2d 130, 131 (Tex.Civ.App.1953); Burns v. Chicago, M., St. P. & Pac. R.R., 192 F.2d 472, 477 (8th Cir. 1951). This is the key to the instant case. In our view, prior to two years and one day from when this suit was commenced, Transport had informed Polaroid, with notice sufficient under section 20(11), that its claims for dealer invoice price had been disallowed and that Transport would only accept the portion of the claims that represented manufactured cost.
 
 
 28
 As the district court noted, no decision of the United States Supreme Court or this court has precisely delineated what constitutes adequate notice of disallowance under section 20(11).[3] The decisions in this area have with uniformity held that the word "disallowed" need not be used in the notice so long as the terms used sufficiently convey to the claimant that the claim is disallowed, in whole or in part.[4] Since the term "disallowed" is not defined in the section and since we have not been cited to or in our research found any legislative history suggesting a technical meaning, we will accord the word its ordinary meaning[5] e. g., "refuse to allow, deny the validity of . . . or reject."[6] To have legal effect the carrier's notice of disallowance must be clear, final and unequivocal. John Morrell & Co. v. Chicago, Rock Is. & Pac. R.R., 495 F.2d 331, 333 (7th Cir. 1974); Burns v. Chicago M., St. P. & Pac. R.R., 100 F.Supp. 405, 408 (W.D.Mo.), aff'd, 192 F.2d 472 (8th Cir. 1951). We are satisfied that Transport's letters of April 9, 1970, October 19, 1970 and February 9, 1971 constituted adequate notice under section 20(11) of Transport's disallowance of the dealer invoice price portion of Polaroid's claims.
 
 
 29
 The April 9 letter clearly stated Transport's position on the dealer invoice price issue: "Your company would not be entitled to a double profit. . . . Your claim should include only your manufactured cost figures." App. at 68a. The October 19, 1970 letter reemphasized that position and indeed included a general release based on what Transport estimated to be Polaroid's manufactured cost. Id. at 78a. Finally, the February 9 letter firmly and clearly stated Transport's view that Polaroid was not entitled to dealer invoice price on either the Hermann or Kowalsky claim. App. at 115a.
 
 
 30
 Appellant argues that these letters were not effective notices of disallowance under section 20(11) because in some cases they requested responses or offered a certain amount in "settlement." We disagree. The letters indicate that Transport was willing to pay the manufactured cost portion of the claims but it did not know the exact portion of Polaroid's claims that represented Polaroid's cost. See, e. g., Letter from Transport to Polaroid, Oct. 19, 1970, app. at 78a. Accordingly, it offered its estimate of cost and invited responses on that estimate. Transport always took the definite position that Polaroid could not recover manufactured cost plus profit; it was willing to settle only on the manufactured cost portion of the claim.[7] Polaroid was or reasonably should have been on notice that if it desired to collect its entire claim both manufactured cost and profit it would have to resort to litigation.[8] Transport sought to remind Polaroid that the limitation period was running five months prior to the date on which Transport believed the action would be barred, app. at 101a. In this respect it was referring to the earlier correspondence that indicated clearly that it would not pay the portion of the claims based on profit. Polaroid chose to ignore this warning.[9]
 
 
 31
 The parties presented the issue of liability to the district court for decision on the depositions and the documents. In their view, there were no issues of material fact present but simply the issue of the legal significance of the pertinent correspondence between Transport and Polaroid.[10] In effect, they are requesting the trial court to resolve the dispute. And it is quite significant that in neither its briefs nor in its oral argument did Polaroid suggest that the case must go to the jury for findings of fact. As discussed above, Polaroid's action was as a matter of law barred by the two year and one day limitations period, and thus summary judgment in favor of Hermann and Kowalsky was proper.[11] Accordingly, the judgment of the district court in Nos. 75-2308 and 75-2309 shall be affirmed.
 
 GIBBONS, Circuit Judge (dissenting):
 
 32
 If I were a juror I might very well construe the correspondence between the shipper, Polaroid Corporation (Polaroid), and the carriers' insurer, Transport Insurance Company (Transport), in the same manner as Judge Hunter does in the majority opinion. However, it is neither in the province of the district court in ruling upon the motion of the carriers, Hermann Forwarding Company (Hermann) and Kowalsky's Express Service (Kowalsky), for summary judgment,[1] nor in ours in reviewing that determination, to draw any inferences in favor of the insurer in assessing its intention in drafting these essentially ambiguous letters.[2] Because the parties agreed at a pretrial conference to submit the issue of liability on depositions and documents as if on cross-motions for summary judgment, they did not consent, as the majority appears to suggest, to having the district court determine disputed issues of fact summarily.[3] If a genuine issue of material fact exists, it must be disposed of by a plenary trial and not on a motion for summary judgment. After careful consideration of all evidence submitted to the district court in support of the carriers' motion for summary judgment, I am convinced that there is a genuine issue of material fact regarding whether or not Transport provided Polaroid adequate notice of disallowance of its lost cargo claims more than two years before Polaroid instituted suit. Because I believe this case was inappropriate for disposition on a summary judgment motion, I dissent.
 
 I.
 
 33
 Case law construing the pertinent proviso of the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 20(11),[4] and § 2(b) of the Uniform Bill of Lading Contract[5] has developed the rule that before the two-year statute of limitations begins to run the carrier's notice of disallowance must be clear, final and unequivocal.[6] The purpose of this rule of construction is obvious. The carrier has the power under the Carmack Amendment to fix the time when the limitations period begins to run against the claimant. The carrier, however, should not be allowed to trigger the running of the limitations period except by means of a notice which makes it clear to the claimant that this power has been exercised. It is easy enough to draft such a notice in words which can be understood in only one way. But when the agent of the common carrier chooses other words, it assumes the risk that a trier of fact will find that it has not exercised that statutory power.
 
 
 34
 Certainly the April 9, 1970 letter from Transport to Polaroid[7] does not unequivocally and finally reject any part of Polaroid's claim for lost cargo attributable to the Hermann hijacking. It emphasizes that Hermann was also an innocent victim of the hijacking, suggests that Polaroid resubmit its cargo loss claim (not to include lost profits), and concludes that "We will await your comments."[8] That the April 9th letter was not intended by Transport to constitute a notice of disallowance capable of triggering the running of the statute of limitations is confirmed, in my judgment, by its October 19, 1970 letter to Polaroid making an offer in compromise and forwarding a release for signature.[9] Even in this letter, however, there is no express language revealing the amount of disallowance in the event Polaroid does not accept the offer in compromise. Moreover, a quite plausible interpretation of the second paragraph of the October 19th letter is that a claim based on dealer's price might be accepted if bills of lading proving that the hijacked shipments had been effectively transferred to the dealers prior to shipment were submitted to the insurer.[10] Finally, the letter refers to the insurer's "spirit of compromise" in processing Polaroid's claim.
 
 
 35
 The district court, however, does not appear to have relied on either of these letters in granting defendants'-appellees' motion for summary judgment. Instead, the court below relied on Transport's February 9, 1971 letter to Polaroid[11] which deals with the Kowalsky hijacking claim and includes a reference to the Hermann claim. The key paragraph in this letter, at least in my judgment, states:
 
 
 36
 It doesn't appear that we are going to get any place in negotiating these claims by corresponding back and forth. We would prefer to set up a meeting with you, and anyone else in your company preferably representing your legal department to discuss these cases and possibly to work out settlements. If we cannot settle we can not (sic) at least come to some understanding. We will await your advice.[12]
 
 
 37
 This was a singularly equivocal way of saying that Polaroid's claim for profits was finally and clearly rejected. Transport itself suggested further negotiations on that very point. Based on the language of this letter, I cannot conclude that a finder of fact must reject Polaroid's interpretation that its entire claim as of February 9, 1971 was still the subject of further negotiation.
 
 II.
 
 38
 In ruling on the carriers' motion for summary judgment the district court confined its attention to these three letters. In affirming that determination Judge Hunter does the same. However, in passing on a motion for summary judgment the court is obliged to consider issues of fact raised by all evidential sources.[13] Since one of the requirements under case law for an adequate notice of disallowance is that the claimant reasonably understand it as such,[14] other correspondence and conduct on the part of the claimant inconsistent with such an understanding is evidentiary on the issue of the sufficiency of the notice.[15] If the district court or the majority canvassed the parties' conduct and correspondence after the February 9th letter, they would discover that neither side acted consistently with an understanding that a final disallowance of any part of Polaroid's claims had been made until May 19, 1972. Thus, for example, there is a file memorandum by the General Traffic Manager of Polaroid, dated March 14, 1972, summarizing a phone conversation with the Assistant Claims Manager of Transport regarding the ongoing settlement negotiations.[16] The memorandum notes that the manufacturer's cost figures given by Polaroid were confidential and that a written offer of settlement was discussed.[17] The result of this March 19th phone conversation was a letter from Transport, dated May 19, 1972, discussing the Kowalsky claim which states:
 
 
 39
 This letter is in response to our telephone conversation of March 14, 1972, wherein you submitted two figures representing what your company may accept in settlement of this claim.
 
 
 40
 The first figure was $97,000.00 representing cost figure, and the second figure, $111,500.00 representing what you would accept.
 
 
 41
 Before we can consider the above figures we must receive from you a complete explanation or breakdown of your cost figures. How did you arrive at $97,000.00 ?Unless or until we can obtain answers to the above, we cannot make any offers.[18]
 
 
 42
 On the same date Transport also wrote to Polaroid regarding the Hermann claim:
 
 
 43
 This letter is in response to our telephone conversation of March 14, 1972.
 
 
 44
 You indicated that your cost figures on this loss amounts to $43,000.00 and that your company would accept nothing less than $46,800.
 
 
 45
 We refer you to our letter of October 19, 1970 wherein we made an offer to you in the amount of $35,226.18.
 
 
 46
 You have never formally turned down this offer.
 
 
 47
 Accordingly, we are taking the position that this offer was a notice of disallowance of the claim and the statute is running.[19]
 
 
 48
 Certainly the letter on the Kowalsky claim is inconsistent with a prior clear, final and unequivocal rejection of Polaroid's claim for profits in excess of manufacturer's costs. Similarly, a reasonable fact-finder could conclude that while the May 19, 1972 letter did unequivocally reject the Hermann claim as of that date, it did not operate retroactively to make the October 19, 1970 letter an unequivocal and final notice of disallowance.
 
 
 49
 Moreover, there are other internal memoranda and letters suggesting that after the February 9, 1971 letter[20] both sides held the matter in abeyance while awaiting a ruling from Judge Weinstein on the proper measure of the loss caused to a shipper by a hijacking.[21] With this evidence in the case a fact-finder could determine that even Transport did not construe the February 9th letter or the October 19th letter as final rejection of the claim,[22] and that the May 19, 1972 interpretation of the October 19 letter was an afterthought.
 
 
 50
 The action was instituted by Polaroid within two years of May 19, 1972, the earliest date at which I could say, as a matter of law, that a fact-finder must find a clear, final and unequivocal rejection of any part of the Hermann claim. Even then, however, the Kowalsky claim was not finally disallowed.
 
 
 51
 This case was simply not appropriate for disposition under Rule 56, Fed.R.Civ.P. It should be remanded for trial.
 
 
 
 [1]
 The release provided, in part:
 FOR AND IN CONSIDERATION of the payment to me/us at this time of the sum of Thirty Five Thousand Two Hundred Twenty Six & 18/100 ($35,226.18), the receipt of which is hereby acknowledge, I/we, being of lawful age, do hereby release, acquit, and forever discharge Hermann Forwarding Company of and from any and all . . . claims . . . resulting from accident that occurred on or about the 16th day of January, 1970, at or near Englewood, New Jersey.
 App. at 79a.
 
 
 [2]
 On June 2, 1971, Transport wrote:
 We are enclosing, for your review and further education, the Court results of a case between Polaroid Corp. v. Long Island Delivery Service Co., Inc. This case is right on point and gives us further proof that our position on this case is accurate and warrants no change.
 We ask once again that you submit your cost figures to us as soon as possible so that proper disposition can be rendered.
 App. at 119a.
 Polaroid responded on June 8, 1971:
 I would like to take this opportunity to acknowledge receipt of your letter of June 2, 1971 pertaining to the outstanding claims indicated above. In your letter, you have referred to the court results of a case between Polaroid Corporation v. Long Island Delivery Service Company, Inc., which you feel substantiates your position on requesting the subject claims be amended to manufacturer costs.
 The court results which you refer to is only a preliminary decision of the court and the matter is still subjudice. Judge Weinstein is presently reconsidering his decision and we have every reason to believe that the full measure of damage will be determined by the court to be dealer invoice price.
 I therefore would like to request that you reconsider your position and approve full payment on the claims as submitted.
 Id. at 120a.
 
 
 [3]
 App. at 20a. The district court adopted the following statement of the Western District of Missouri in Burns v. Chicago, M., St. P. & Pac. R.R., 100 F.Supp. 405, 408 (W.D.Mo.), aff'd, 192 F.2d 472 (8th Cir. 1951):
 Said statute and contract cause the limitation period here considered to commence to run when notice in writing is given by a carrier that a claim has been "disallowed" in whole or in part. The word "disallowed" so used therein is not a term of art. A proper interpretation to be given thereto is that regardless of the form by which notice is given, so long as it is in writing, if the carrier makes known to a claimant that a claim made against it has been disallowed, then a claimant may be said to have been given adequate notice of disallowance of his claim so as to start the running of the period of limitation thereby set up. A. G. Reeves Steel Const. Co. v. Weiss, etc., 6 Cir., 119 F.2d 472; Gans S.S. Line v. U.S., D.C., 105 F.2d 955. In 13 C.J.S. Carriers § 242, p. 498, where the text refers to the form and sufficiency of notice given under a limitation provision such as here considered, it is said: " * * * it is not necessary for the carrier to state in so many words, or in the language of the contract, that the claim is disallowed either in whole or in part; it is sufficient if the carrier uses such terms as convey to claimant the information that the claim is disallowed."
 Appellant does not contest this statement of law.
 
 
 [4]
 See, e. g., John Morrell & Co. v. Chicago, Rock Is. & Pac. R.R., 495 F.2d 331, 333 (7th Cir. 1974); Burns v. Chicago M., St. P. & Pac. R.R., supra; Tribby v. Chicago & N. W. Ry., 64 S.D. 23, 264 N.W. 185 (1935)
 
 
 [5]
 See, e. g., Banks v. Chicago Grain Trimmers Ass'n, 390 U.S. 459, 465, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968); Malat v. Riddell, 383 U.S. 569, 571, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1960). See generally Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum.L.Rev. 527 (1947)
 
 
 [6]
 Black's Law Dictionary 549 (Rev. 4th ed. 1968)
 
 
 [7]
 Moreover, the correspondence during this period demonstrates that Polaroid clearly understood Transport's position. See, e. g., Letter of Apr. 17, 1970 from Polaroid to Transport, app. at 69a; Letter of Sept. 10, 1970 from Polaroid to Transport, app. at 76-77a; cf. Letter of June 8, 1971 from Polaroid to Transport, app. at 93a; Polaroid Interoffice Memorandum of Mar. 6, 1972, app. at 124a
 
 
 [8]
 The language used in these letters is far clearer than that which has been found adequate under section 20(11) in other cases. See, e. g., Atlantic Coast Line R.R. v. Wauchula Truck Growers' Ass'n, 95 Fla. 392, 118 So. 52 (1928); Barber v. Southern Pac. Co., 51 N.M. 396, 185 P.2d 979 (1947); Tribby v. Chicago & N. W. Ry., 64 S.D. 23, 264 N.W. 185 (1935)
 
 
 [9]
 As discussed above, the letters of April 9, October 19 and February 9 clearly conveyed Transport's final rejection of dealer invoice price, which of course included profit, as the proper measure of damage. And examination of the parties' conduct and correspondence subsequent to February 9 only reinforces this conclusion. Both parties were awaiting the decision in the Long Island Delivery Co. case for guidance on the issue of the proper measure of damages. See note 2 supra. And there was correspondence between the parties regarding the exact amount of Polaroid's cost and indeed offers by Transport to settle at certain sums believed to represent Polaroid's cost. See Letter from Transport to Polaroid, May 14, 1972, app. at 126a. But at no time did Transport waver from its final position to deny Polaroid dealer invoice price on its claims. Indeed, Polaroid's General Traffic Manager admitted that at no time did Transport offer more or less than 60 percent on either the Hermann or Kowalsky claim. App. at 54a-55a. Sixty percent represented Transport's upper estimate of Polaroid's cost. See Letter from Transport to Polaroid, Oct. 19, 1970, app. at 78a
 
 
 [10]
 See, e. g., Holford v. Louisville & Nashville R.R., 266 F.Supp. 408 (W.D.Tenn.1967) (summary judgment granted; section 20(11) claim time barred); Burns v. Chicago M., St. P. & Pac. R.R., 100 F.Supp. 405 (W.D.Mo.), aff'd, 192 F.2d 472 (8th Cir. 1951) (summary judgment granted; section 20(11) claim time barred); cf. L. M. Kirkpatrick Co. v. Illinois Cent. R.R., 190 Miss. 157, 195 So. 692 (1940) (decided on pleadings; section 20(11) claim time barred)
 
 
 [11]
 Polaroid has also appealed from the denial of its motion to vacate summary judgment and for reargument. The motion was made because Polaroid had recently found the case of John Morrell & Co. v. Chicago, Rock Is. & Pac. R.R., 495 F.2d 331 (7th Cir. 1974) and wished to argue to the court the significance of that case. The court did not abuse its discretion in denying appellant's motion
 
 
 [1]
 Fed.R.Civ.P. 56
 
 
 [2]
 Inferences to be drawn from the underlying facts contained in the evidential sources submitted to the district court in support of a motion for summary judgment must be viewed in the light most favorable to the party opposing the motion. The allegations of the non-movant must be taken as true and, when these assertions conflict with those of the movant, the former must receive the benefit of the doubt. Goodman v. Mead Johnson, 534 F.2d 566, 573 (3d Cir. 1976) (collecting authorities); Scott v. Plante, 532 F.2d 939, 945 (3d Cir. 1976)
 
 
 [3]
 E. g., Newark Morning Ledger Co. v. United States, 539 F.2d 929 (3d Cir. 1976); Rains v. Cascade Industries, Inc., 402 F.2d 241, 245 (3d Cir. 1968)
 
 
 [4]
 49 U.S.C. § 20(11) provides in pertinent part:
 . . . That it shall be unlawful for any such receiving or delivering common carrier to provide by rule, contract, regulation, or otherwise a shorter period for the filing of claims than nine months, and for the institution of suits than two years, such period for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice . . . .
 
 
 [5]
 § 2(b) of the Uniform Bill of Lading contract approved by the Interstate Commerce Commission states in relevant part that:
 (S)uits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice.
 
 
 [6]
 E. g., John Morrell Co. v. Chicago, Rock Is. & Pac. R.R. Co., 495 F.2d 331, 333 (7th Cir. 1974) (final); Cordingley v. Allied Van Lines, Inc., 413 F.Supp. 1398, 1401 (D.Mont.1976) (final); Holford v. Louisville & Nashville R.R. Co., 266 F.Supp. 408 (W.D.Tenn.1967) (unequivocal); Burns v. Chicago, M., St. P. & P.R. Co., 100 F.Supp. 405 (W.D.Mo.), aff'd 192 F.2d 472 (8th Cir. 1951) (clear, unequivocal); Robinson v. Trustees of N. Y., N. H. & H. R. Co., 318 Mass. 121, 60 N.E.2d 593 (1945) (final); Tribby v. Chicago & N. W. Ry., 64 S.D. 23, 264 N.W. 185 (1935); Chappell v. New York & O. W. Ry. Co., 248 App.Div. 804, 289 N.Y.S. 52 (3d Dep't 1936) (final); Atlantic Coast Line R. Co. v. Wauchula Truck Growers Ass'n, 95 Fla. 392, 118 So. 52 (1928) (clear)
 
 
 [7]
 Exhibit JA-5, App. at 68a
 
 
 [8]
 Id
 
 
 [9]
 Exhibit JA-11, App. at 78a
 
 
 [10]
 The second paragraph reads as follows:
 We are willing to accept your contention that you are entitled to the dealer's price on the basis you are simply acting on behalf of these dealers in settling the claims. You have not furnished us bills of lading as proof the shipments were effectively transferred to these dealers, nor have you furnished us anything in the way of proof that the dealers have paid you for the merchandise. Therefore, let's go back to the basics, which is the manufacturer's cost of the stolen merchandise.
 Id.
 
 
 [11]
 Exhibit JB-38, App. at 115a
 
 
 [12]
 Id
 
 
 [13]
 E. g., Goodman v. Mead Johnson, 534 F.2d at 573; Scott v. Plante, 532 F.2d at 945
 
 
 [14]
 See, e. g., Burns v. Chicago, M., St. P. & P. R. Co., 100 F.Supp. at 408; Tribby v. Chicago & N. W. Ry. Co., 64 S.D. at 25, 264 N.W. at 186
 
 
 [15]
 If the February 9th letter constituted a final disallowance of any portion of Polaroid's claim, of course, subsequent correspondence and actions of the parties could not toll the running of the limitations period and therefore would not be evidentiary material. E. g., John Morrell & Co. v. Chicago, Rock Is. & Pac. R.R. Co., 495 F.2d at 333; L. M. Kirkpatrick Co. v. I. C. R. Co., 190 Miss. 157, 195 So. 692 (1940). The rationale supporting this doctrine is that the carrier may not waive or be estopped to assert the requirements of the Uniform Bill of Lading inasmuch as this would permit the very discrimination the law was intended to prohibit. See, e. g., Chesapeake & Ohio Ry. Co. v. Martin, 283 U.S. 209, 51 S.Ct. 453, 75 L.Ed. 983 (1931); B. A. Walterman Co. v. Pa. R.R. Co., 295 F.2d 627, 628 (6th Cir. 1961) (per curiam); H. Rouw Co. v. Texas & N. O. R. Co., 260 S.W.2d 130, 132 (Tex.Civ.App.1953)
 
 
 [16]
 Exhibit JB-47, App. at 125a
 
 
 [17]
 Id
 
 
 [18]
 Exhibit JB-48, App. at 126a
 
 
 [19]
 Exhibit JA-27, App. at 101a
 
 
 [20]
 See, e. g., Exhibit JA-20, App. at 92a; Exhibit JB-41, App. at 119a; Exhibit JA-21, App. at 93a; Exhibit JB-42, App. at 120a; Exhibit JA-22, App. at 94a-95a
 
 
 [21]
 That case was settled by the parties before a final court determination was made. See appellant's brief at 22, 26-27. However, in Polaroid v. Shuster's Express Co., Inc., 484 F.2d 349 (1st Cir. 1973), involving an identical factual situation, the first circuit held that the correct measure of damages was wholesale selling price less any cost savings rather than the cost of manufacturing the hijacked equipment
 
 
 [22]
 See John Morrell & Co. v. Chicago, Rock Is. & Pac. R.R. Co., 495 F.2d at 333 (carrier itself did not consider a particular letter as a clear, definite and unequivocal denial of a claim)