Jay A. CAMMACK and Jerry Cammack, and Ranger Insurance Company, Plaintiffs,

v.

TRANS WORLD AIRLINES, INC., Defendant.

No. 76–CV–52–SJ.

United States District Court, W. D. Missouri, St. Joseph Division.

Dec. 11, 1979.

G. Spencer Miller, Morris, Foust, Beckett & Ponick, Kansas City, Mo., for plaintiffs.

J. Michael Cronan, Jackson & Sherman, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER LIMITING PLAINTIFF TO RECOVERY OF FIFTY DOLLARS AND GRANTING SUMMARY JUDGMENT

SACHS, District Judge.

Plaintiff shippers sued defendant airline ("TWA") for the loss of a shipment of gold coins, valued at $44,750. The shippers were reimbursed by an insurer ("Ranger") which has been added as a party plaintiff, and is the real party in interest. The parties have filed cross-motions for summary judgment involving several issues, but the Court has determined that it is only necessary to consider one issue, the timeliness of suit. The Court concludes that suit was untimely, except for the sum of $50.00 which TWA asserted was the limit of liability, in the controlling letter dated April 19, 1974. Suit was filed more than two years after that letter, and was out of time.

The applicable tariff provision governing this action against an air freight carrier has been submitted by the parties as an attachment to their joint stipulation, and reads in pertinent part, "No carrier shall be liable . . . unless such action is brought within two years after the date written notice is given to the claimant that the carrier has disallowed the claim in whole or in part." Official Air Freight Rules Tariff No. 1–B, Rule No. 62(a). This provision is consistent with 49 U.S.C. § 20(11). A carrier's valid tariffs govern the nature and extent of the rights and liabilities of the shipper and the carrier. *North American Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229 (2d Cir. 1978).

The parties are in disagreement as to which action in a series of correspondence constituted "notice of disallowance" to the claimant.

■ The following recited items of correspondence are those which are pertinent to both parties' contentions. On July 27, 1973, the shipper addressed a letter to defendant airline's air freight claims manager making his "formal request for payment for the lost shipment." On August 6, 1973, defendant's cargo claims representative wrote to the originating carrier enclosing the claim and the invoice. This letter asks the originating carrier to contact the claimant directly regarding settlement under the provisions of the shipper's insurance. It was carbon copied to the shipper and a note at the bottom of the letter, apparently directed to him, stated, "Your claim will be handled by [originating carrier] and/or the underwriters of the shipper's insurance shown on their airbill." On April 11, 1974, adjusters for the insurer of the originating carrier, which had by then settled with shippers, and was subrogated to their rights against defendant carrier, wrote to TWA informing it of this status and demanding full payment on the claim. TWA responded by letter of April 19, 1974, with which it enclosed a draft "in the amount of $50.00 representing the extent of carrier liability." TWA expressly stated that since the draft represented the extent of carrier liability that it was the most that could be offered in settlement of the subrogation claim. The check apparently enclosed with that letter, though dated April 22, 1974, also stated that it is in "full settlement of your claim." No further correspondence from TWA is relied on by plaintiff insurer.

In spite of defendant's reply, the adjusters elected to continue the correspondence and notified TWA by letter of May 6, 1974, that the $50.00 check was not acceptable. TWA had apparently considered the matter closed in terms of claims procedure, and submitted the May 6 correspondence to its own insurer for handling. By letter of May 31, 1974, defendant's insurer informed the adjusters of this and of the fact stated that it was attempting to get more details of the claim from defendant, adding in this regard that it "would appreciate your holding your claim in abeyance pending our next communication . . ." After receiving no "satisfaction," the adjusters demanded immediate reply from defendant's insurer, threatening to turn the matter over "to our legal department for collection." On August 14, 1974, defendant's insurer informed the adjusters in a brief letter that it had received information as to defendant's basis for denying any liability over $50.00, enclosed a copy of defendant's letter (which letter is not before the Court, but presumably this refers to that of April 19, 1974), and stated its agreement with defendant's position.

Plaintiff argues that, considering the series of correspondence as a whole, there was no clear disallowance of the claim until the August 14, 1974, letter from defendant's insurer, and that since plaintiff could not have received this written notice by mail for a few days, that this action, brought April 17, 1976, was timely filed.

The Court concludes that plaintiff is clearly out of time, under applicable legal principles established in this Circuit in a District Court opinion by Judge Ridge, affirmed in an opinion by Judge Woodrough. *Burns v. Chicago, M., St. P. & P. R. Co.*, 100 F.Supp. 405 (W.D.Mo.1951), affirmed, 192 F.2d 472 (8th Cir. 1951). The *Burns* ruling is closely in point factually, although more favorable to that shipper, has never been questioned in this Circuit, and has much to commend it as a matter of public policy. It would be wasteful for this Court to depart from the *Burns* ruling, as would be required to give further consideration to the claim of plaintiff insurer, unless the Court of Appeals retracts the rule established almost thirty years ago in *Burns.*

Summary judgment for the carrier was entered by Judge Ridge in *Burns*, where a railroad had rejected a shipper's claim, ex-

cept for "$450.00 for which voucher can be prepared immediately, the balance of the loss being respectfully disallowed." The railroad's letter was dated December 1, 1947. Thereafter, beginning in April, 1948, attorneys for the shipper attempted to reopen the matter, the parties conferred, and the railroad agreed to consider "further information" promised by the shipper, but not supplied. On August 6, 1948, a second letter disallowing the claim was sent to the shipper's attorney. Still further contacts occurred, "looking to a compromise of said claim." 100 F.Supp. at 407. In January, 1949, defendant's claim agent telegraphed plaintiff's counsel: "Re Burns claim necessary to handle law department will advise further as soon as possible." In March, 1950, the railroad's law department advised that the claim was time-barred, as of December 1, 1949. Suit was filed in March, 1950.

▪ The Court held that the December 1, 1947 letter had, in fact, been a disallowance of the shipper's claim, that the time limits for suit were thereby established, and that subsequent negotiations between the parties and the second rejection of the claim did not toll the running of limitations. Responding to plaintiff's contention that the notice disallowing the claim "may be revoked or waived by subsequent negotiations" the Court reviewed various authorities and held that the running of the limitation period "could not have been tolled by any subsequent negotiations between the parties such as are here revealed." 100 F.Supp. at 409.

The Court of Appeals affirmed, citing additional authorities, and noting that discriminatory handling of claims could result if a carrier were permitted to waive a time limitation. *Burns v. Chicago, M., St. P. &*

*P. R. Co.,* 192 F.2d 472, 476–6 (8th Cir. 1951).

In the present case it is not necessary to reconsider the question of estoppel, which might have been argued in *Burns* if the railroad negotiators had, by some artifice, prevented suit from being filed before December 1, 1949. The plaintiff's case here is somewhat less appealing than that presented by *Burns,* in that this plaintiff could not have been prejudiced by any negotiations which quickly ended, and TWA had no communication whatsoever with claimant after the rejection of all but $50.00 of the claim, on April 19, 1974.[1]

The *Burns* rule, which seems clearly controlling in this Circuit, has not been rendered suspect by the passage of time. In 1977 litigation, two District Judges in New York rejected shippers' contentions that post-rejection negotiations should affect the running of the limitations period. *B. F. Goodrich Tire Company v. Louisville & Nashville R. Co.,* 439 F.Supp. 363 (S.D.N.Y. 1977). It was there stated (l.c. 365):

> "To hold, as plaintiff seeks here, that discussions between a carrier and a claimant, held after a formal denial of a claim, with an eye toward possible settlement before the institution of litigation, negate the effects of the denial of claim would be to hamper any kind of settlement dialogue once a formal denial was proffered. The purpose for a formal denial of claim is to start the statute of limitations machinery . . . rather than the discouragement of meaningful negotiations between parties."

An occasional case has held that a carrier cannot rely on a "'qualified' disallowance leaving the way open for negotiations." See *John Morrell & Co. v. Chicago, Rock Isl. & Pac. R. R. Co.,* 495 F.2d 331, 333 (7th Cir. 1974). Even those cases apparently accept

---

1. While the parties have stipulated that TWA's insurer and Ranger's adjuster were acting as agents for their principals and the Court assumes there was full authorization to settle, the correspondence of TWA's insurer does not purport to represent any financial interest other than the insurer's. The Court has some doubt

that anything said by the insurer on its own behalf in the letter of May 31, 1974 (saying it was seeking further information and requesting plaintiff to hold its claim in abeyance) could be attributed to TWA, in the absence of some assertion in the correspondence tying TWA to the request.

the rule that "once disallowance has been made, subsequent correspondence does not halt the running of the limitations period." Ibid.

Nothing which can fairly be called a qualified disallowance, inviting further discussions, appears in TWA's letter of April 19, 1974. Even plaintiff acknowledges that "the April 19 letter, standing alone, might be viewed as a disallowance of the claim if not followed by other correspondence." Plaintiff's Suggestions filed June 27, 1979, page 10. The subsequent correspondence, however, was not invited by TWA, and was at best a series of exchanges looking toward the possible reopening of negotiations. No citation has been offered by plaintiff permitting such correspondence to have a tolling effect on the time period fixed by the April 19, 1974 letter. *Burns* will not permit plaintiff to prevail.

Plaintiff's complaint, filed August 17, 1976, was untimely.[2]

It will be noted that there has never been a disallowance as to the sum of $50.00, and plaintiff is apparently entitled to that sum. Summary judgment will be entered in favor of plaintiff, in the sum of $50.00, with each party to bear its own costs.

IT IS SO ORDERED.

---

2. The complaint may well have been untimely, even on plaintiff's theory that the two-year period was triggered by a letter dated August 14, 1974, mailed by TWA's insurer in New York to plaintiff's adjuster in Beaumont, Texas. It seems likely that a Wednesday mailing would have been received on Friday, August 16, 1974, and that this suit was a day late, even on plaintiff's calculations. The original letter of August 14, 1974, is not before the Court, and nothing is presented to establish its receipt on or after Saturday, the 17th, within two years of the filing of suit.