STAR–KIST FOODS, INC., Plaintiff,

v.

CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY; William M. Gibbon, Trustee of the Property of Chicago, Rock Island & Pacific Railroad Company, Debtor; and Kansas City Terminal Railway Company, Defendants.

Interstate Commerce Commission, Intervenor Defendant.

No. 83 C 5404.

United States District Court, N.D. Illinois, E.D.

Feb. 6, 1984.

Leonard R. Kofkin, Chicago, Ill., for plaintiff.

Bruce C. Spitzer/Marvin F. Metge, Gorham, Metge, Bowman & Hourigan, Chicago, Ill., for defendants.

Daniel S. Linhardt (ICC), Washington, D.C., for intervenor defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff, Star-Kist Foods ("Star-Kist"), brought this action against the Chicago, Rock Island and Pacific Railroad Company ("Rock Island") and Kansas City Terminal Railway Company ("KCT") to recover for alleged loss in transit of four carloads of pet food transported on defendants' railroad during the months of December, 1979, and January, 1980. Jurisdiction is asserted pursuant to 28 U.S.C. § 1337 and the Carmack Amendment, 49 U.S.C. § 11707. Presently before the Court is KCT's motion to dismiss or for summary judgment. For reasons set forth below, KCT's motion for summary judgment is granted.

Rock Island operated as a rail carrier pursuant to § 77 of the Bankruptcy Act, Title 11 U.S.C., from March 17, 1975, until October 4, 1979. KCT, pursuant to Emergency Directed Service Order No. 1396, as authorized by 49 U.S.C. § 11125, commenced operations over the Rock Island as directed carrier on October 5, 1979, and continued such operations until March 31, 1980.[1]

Star-Kist filed a notice of claim for damage within the nine-month period prescribed by the Carmack Amendment, 49 U.S.C. § 11707(a), and § 2(b) of the Uni-

---

1. The Interstate Commerce Commission issued the directed-service order upon a finding of Rock Island's inability to transport its traffic due to an insufficient cash position, which made its continuing operations impossible within the meaning of 49 U.S.C. § 11125(a)(1).

form Bill of Lading. Rock Island denied the claim, in writing, on December 5, 1980. The parties continued correspondence until the denial was reiterated on September 28, 1981.

■ Star-Kist commenced a civil action against Rock Island in the Superior Court of the County of Los Angeles, California on July 21, 1982.[2] On March 8, 1983, the Superior Court granted Rock Island's motion to quash service of summons. Plaintiff filed the present action on August 5, 1983.[3]

■ Defendants have attached to their pleadings several exhibits in support of their motion to dismiss, including two denials of claim for damages and additional correspondence between the parties. Under Fed.R.Civ.P. 12(b)(6), however, the Court may not consider extrinsic evidence

in determining motions to dismiss. *Grand Opera Co. v. Twentieth Century Fox Film Corp.,* 235 F.2d 303, 307 (7th Cir.1956). Under Fed.R.Civ.P. 56, summary judgment may be granted to a defendant if there exists no genuine issue of fact material to a judgment in its favor as a matter of law. *Cedillo v. International Association of Bridge and Structural Iron Workers, Local Union No. 1,* 603 F.2d 7, 10 (7th Cir. 1979), and such a motion is not appropriate where issues arise concerning the intent of a particular party. *Staren v. American Nat. Bank & Tr. Co. of Chicago,* 529 F.2d 1257, 1261 (7th Cir.1976); *Conrad v. Delta Air Lines, Inc.,* 494 F.2d 914, 918 (7th Cir.1974). We therefore treat KCT's motion as one for summary judgment, and have considered relevant extrinsic evidence.

KCT argues that Star-Kist's suit is barred by the Carmack Amendment, 49 U.S.C. § 11707,[4] and § 2(b) of the Uniform

---

**2.** Star-Kist contends that the commencement of the lawsuit in California served to toll the statute of limitations under the bill of lading contract. The issue of whether commencement of an action in compliance with Fed.R.Civ.P. 3 is sufficient, by itself, to toll the statute of limitations is inapposite to the present case. Fed.R. Civ.P. 3 provides that "a civil action is commenced by filing a complaint with the court." Courts which have accorded a literal construction of Fed.R.Civ.P. 3 have only done so while presupposing a jurisdictional basis for asserting such a claim. *Burnett v. New York Central R.R. Co.,* 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965); *U.S. v. Wahl,* 583 F.2d 285 (6th Cir. 1978); *Windbrooke Development Corp. v. Environmental Enterprise, Inc. of Florida,* 524 F.2d 461 (5th Cir.1975); *Weaver v. United California Bank,* 350 F.Supp. 1373 (N.D.Cal.1972).

It is well settled that the commencement of an action in a court which lacks jurisdiction will not toll the statute of limitations. *Ellis v. Lynch,* 106 F.Supp. 100, 102 (D.N.J.1952); *Fairclough v. Southern Pacific Co.,* 219 N.Y. 657, 114 N.E. 1066 (1916). An exception to the rule is when the court, lacking subject matter jurisdiction, has authority to transfer the action to a court of competent jurisdiction.· *Herb v. Pitcairn,* 324 U.S. 117, 65 S.Ct. 459, 89 L.Ed. 789 (1944). In *Covington v. United States Dept. of Air Force,* 303 F.Supp. 1145 (N.D.Miss.1969), the Northern District of Mississippi held that the filing of an action in a court which had neither jurisdiction of the action nor the power to transfer the action to the proper court, did not operate to toll the statute of limitations. *Id.* at 1148.

Therefore, plaintiff's argument that the commencement of the lawsuit in California served to toll the limitations period is entirely without support inasmuch as the court had neither the authority to adjudicate the claim nor the authority to transfer the cause to another court.

**3.** Star-Kist also contends that it did not receive notice as to the Emergency Directed Service Order authorizing KCT to operate over the Rock Island pursuant to 49 U.S.C. § 11125. This order was published in the *Federal Register* on October 1, 1979. Publications in the *Federal Register* are required to reasonably apprise any interested person of issues involved in the proceeding. 44 U.S.C. § 1507; *Buckner Trucking, Inc. v. U.S.,* 354 F.Supp. 1210, 1219 (D.C.Tex. 1973). And it is well settled that regulations published in the *Federal Register* serve legal notice of their contents to all who may be thereby affected. *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *Coat Corp. of America v. U.S.,* 123 Ct.Cl. 176, 196, 105 F.Supp. 832 (1952); *Lynsky v. U.S.,* 130 Ct.Cl. 149, 153, 126 F.Supp. 453 (1954), 9 Wright & Miller, § 2410. Absent fraud or misrepresentation, Star-Kist is imputed to have legal notice of the order.

**4.** The portion of the Carmack Amendment at issue provides, in pertinent part, that

[a] carrier may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than 2 years for bringing a civil action against it under this section.

Bill of Lading,[5] which provides that suit may only be instituted against the carrier within two years and one day from the date when the carrier gives the claimant written notice that the claim has been disallowed.

■ A carrier's valid contract governs the nature and extent of the rights and liabilities of the shipper and carrier and is subject to the applicable provisions of the Carmack Amendment. 49 U.S.C. § 11707(e) provides no statute of limitations; rather, it imposes a reasonable period of limitations a carrier may impose. *Westhemeco, Ltd. v. New Hampshire Insurance Co.*, 484 F.Supp. 1158, 1161 (S.D. N.Y.1980).

The parties are in disagreement as to which action in a series of correspondence constituted "notice of disallowance" to the claimant. Although the Supreme Court has not clearly delineated the sufficiency of a "notice of disallowance," the decisions in this area have uniformly held that the word "disallowed" need not be used in the notice as long as the terms used adequately convey to the claimant that the claim is disallowed. *Burns v. Chicago*, 100 F.Supp. 405 (W.D.Mo.1951); *Cordingley v. Allied Van Lines, Inc.*, 563 F.2d 960, 964 (9th Cir. 1977); *Westhemeco, Ltd. v. New Hampshire Ins. Co.*, 484 F.Supp. at 1163.

■ By the relevant terms of the bill of lading and of the statute, Star-Kist's suit is barred only if KCT's letter of December 5, 1980, constituted a disallowance so as to commence the running of the limitations period. Although Star-Kist argues that KCT's written inquiry of April 2, 1982, served to toll the limitation period, negotiations subsequent to a denial or disallowance of claim will not toll the running of the limitations period. *Burns v. Chicago*, 100 F.Supp. at 406; *Cammack v. Trans World Airlines*, 482 F.Supp. 914, 917 (W.D.

Missouri 1979). In *B.F. Goodrich Tire Company v. Louisville & Nashville R.R. Co.*, the court determined that "[t]he purpose for a formal denial of claim is to start the statute of limitations machinery ... rather than the discouragement of meaningful negotiations between parties." 439 F.Supp. 363, 365 (S.D.N.Y.1977).

■ Regarding the letter of disallowance, it must be "clear, final and unequivocal." *Polaroid Corp. v. Hermann Forwarding Co.*, 541 F.2d 1007, 1012 (3d Cir. 1976). The Seventh Circuit has further supplemented this standard by inquiring "whether the notice made it clear that the claim as submitted would not be honored," *John Morrell & Co. v. Chicago, Rock Island and Pac. R.R. Co.*, 495 F.2d 331, 333 (7th Cir.1974), and considers whether the letter of disallowance lacked or possessed a "clear finality" so as to constitute a qualified or unqualified disallowance for purposes of applying the statute of limitations. *Id.* The Court of Appeals in *Morrell* held the carrier's disallowance as qualified and therefore did not serve to commence the running of the limitations period.

*Morrell*, however, is distinguishable from the present case. The carrier in *Morrell* qualified its initial disallowance to the extent it did not possess sufficient information to achieve a final determination of liability. The subsequent correspondence with the shipper noted a concession by the carrier for partial liability which ultimately invited further negotiations and inquiry into the claim. *Id.* at 332. Throughout the series of correspondence in *Morrell*, the carrier made no reference to the initial disallowance until almost two years later, when it asserted the shipper's claim was time barred. *Id.* at 333.

5. Section 2(b) of the Bill of Lading is drafted in compliance with the Carmack Amendment, 49 U.S.C. § 11707, and provides, in pertinent part, that

[a]s a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing the bill of lading, or carrier on whose line the loss dam-

age, injury or delay occurred, within nine months after delivery ... and suits shall be instituted against any carrier within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice.

In the present case, the initial disallowance displayed no necessity for clarification for the letter did not invite further correspondence from the shipper for purposes of ascertaining liability. KCT's December 5, 1980, notice of disallowance did not suggest partial liability, nor did its subsequent correspondence. The disallowance cannot be considered qualified, as one lacking "clear finality," as the denial was effectively reiterated on September 28, 1981. For the foregoing reasons, we find that Star-Kist may not presently assert its claim against defendants.

Accordingly, defendants' motion for summary judgment is granted. It is so ordered.