William A. CORDINGLEY, Plaintiff,

v.

ALLIED VAN LINES, INC., Defendant.

No. CV 75–34–GF.

United States District Court,
D. Montana,
Great Falls Division.

June 10, 1976.

Ray F. Koby, Swanberg, Koby, Swanberg & Matteucci, Great Falls, Mont., for plaintiff.

Smith, Emmons, Baillie & Walsh, Great Falls, Mont., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

RUSSELL E. SMITH, Chief Judge.

### FINDINGS OF FACT

I find:

#### I.

This action is brought to recover damages under the provisions of the Interstate Commerce Act (49 U.S.C. § 20(11)). Jurisdiction is conferred on this court by 28 U.S.C. § 1337.

#### II.

Defendant is a motor common carrier engaged in the business of transporting household goods for hire in interstate commerce, providing service to the shipping public between points including Des Moines, Iowa, and Great Falls, Montana. Plaintiff is a resident of Great Falls, Montana.

#### III.

The plaintiff delivered a quantity of household goods to the defendant in Des Moines, Iowa, for shipment to Great Falls,

Montana. It was intended that the goods be shipped in one shipment, but for some reason the major part of the goods was shipped in June and arrived in Great Falls on July 7, 1972. The remainder of the goods was shipped in July and burned en route.

### IV.

Separate bills of lading were used for each shipment, but the plaintiff did not see either bill of lading. The first bill of lading was unsigned. The second bore plaintiff's signature, but it was not signed by him or any authorized agent of his.

### V.

The items destroyed by fire and for which claim is made were two mirrors—one large ornate antique mirror and one small mirror. The large mirror was an article of extraordinary value.

### VI.

The Uniform Bill of Lading contains a provision as follows:

> *SECTION 1.* The carrier shall be liable for physical loss of or damage to any articles from external cause while being carried or held in storage in transit EXCEPT for condition or flavor of perishable articles, and EXCEPT documents, currency, money, jewelry, watches, precious stones or articles of extraordinary value which are not specifically listed on the bill of lading . . . .

This provision reflects Rule 12(a) of the defendant's tariff on file. Prior to the shipment of the goods the plaintiff was not advised of this provision, nor was he given an opportunity to declare an extraordinary value for the large mirror.

### VII.

Section 6 of the Uniform Bill of Lading provides in part:

> *SECTION 6.* As a condition precedent to recovery . . . suit must be instituted against carrier within two (2) years and one (1) day from the date when notice in writing is given by carrier to the claimant that carrier has disallowed the claim . . . . .

This section is identical to a provision in the defendant's tariff on file.

### VIII.

The value of the large ornate antique mirror was $5,000.00. The value of the small mirror was $400.00.

### IX.

Shortly after plaintiff learned of the loss, he filed a claim. On May 16, 1973, defendant, through its Customer Service Department, sent to plaintiff a letter reading:

> \*　　\*　　\*　　\*　　\*　　\*

> Pertaining to the two antique mirrors, please be advised that under Rule 12 of the tariff rules and regulations 144C, which is approved by the Interstate Commerce Commission, these mirrors are classified as items of extraordinary value, which should have been listed on the bill of lading. Thus Allied Van Lines cannot accept any liability.

> \*　　\*　　\*　　\*　　\*　　\*

Plaintiff's Ex. 10

On June 20, plaintiff responded by letter, which stated among other things:

> \*　　\*　　\*　　\*　　\*　　\*

> Secondly, I do not see why I should not be reimbursed when one of your drivers burns up a load. I do not know what is meant by not having the items listed on the bill of lading. Mr. Cathcart was fully aware of their value as it was discussed a number of times. . . . Plaintiff's Ex. 11

On July 17, defendant replied:

> . . . I have requested additional information from various parties involved.

> Upon receipt of requested information, I shall be able to take further consideration regarding your claim.

> I shall try to be in touch with you within the very near future. Plaintiff's Ex. 12

### X.

This action was filed on June 27, 1975.

## CONCLUSIONS OF LAW

From the foregoing, I conclude as a matter of law:

■ The fact that the large mirror was not listed on the bill of lading as an item of extraordinary value does not, under the circumstances here, bar plaintiff from claiming damages for its destruction. *Vandenbergh v. Allied Van Lines, Inc.*, 137 Mont. 327, 351 P.2d 537 (1960), *cert. denied*, 364 U.S. 830, 81 S.Ct. 69, 5 L.Ed.2d 57 (1960), and cases there cited.

Defendant asserts that the letter of May 16 was a disallowance of the claim, that the defendant could not later, by subsequent action, alter, modify, or waive that letter for limitations purposes, and that, hence, the action was barred by the two-year-and-one-day period of limitations specified in the bills of lading and in the controlling tariff. Defendant cites some cases, the language of which supports its position, and some cases which are exactly in point and which, if followed, would lead to a ruling that the action is barred. *Burns v. Chicago, Milwaukee, St. Paul & Pacific R.R.*, 192 F.2d 472 (8th Cir. 1951); *Holford v. Louisville & Nashville R.R.*, 266 F.Supp. 408 (W.D.Tenn.1967); *Barber v. Southern Pacific Co.*, 51 N.M. 396, 185 P.2d 979 (1947); *L. M. Kirkpatrick Co. v. Illinois Central R.R.*, 190 Miss. 157, 195 So. 692 (1940), 135 A.L.R. 607 (1941). I am satisfied that these cases represent a majority view. It is my opinion that those of the above-cited cases which are exactly in point are wrongly decided, and I do not follow them.[1]

■ The limitation here involved is authorized by 49 U.S.C. § 20(11).[2] This section does not require the carrier to incorporate limitations in its contracts, rules, or regulations. It does not make the timely filing of a claim or the timely institution of a suit a condition of the right.[3] The purpose of the statute is to prevent the carrier from fixing unreasonably short limitation periods and in effect states that the time for the limitation of an action shall be not less than two years from the written notice that the carrier has disallowed the claim. The statute does not define the term "disallowed," nor does the bill of lading, nor does the tariff. The statute does not prescribe any period within which the carrier must allow or disallow a claim. The carrier is left completely free to fix the period when the limitation begins to run. Under these circumstances, it seems to me that the rule should be—and that is the core of this opinion—that the statute begins to run on that date when the carrier can be said, in light of the totality of its conduct, to have finally disallowed the claim.

The considerations which lead me to announce this rule are these:[4]

1. As I see it, I am bound by the federal statutes and by the decisions of the United States Supreme Court and the Court of Appeals for the Ninth Circuit. I have an obligation to consider the decisions of other courts, but no duty to follow them where they seem to me to be patently wrong.

2. ". . . *Provided further*, That it shall be unlawful for any such receiving or delivering common carrier to provide by rule, contract, regulation, or otherwise a shorter period for the filing of claims than nine months, and for the institution of suits than two years, such period for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice . . . ."

3. The court in *L. M. Kirkpatrick Co. v. Illinois Central R.R., supra*, so held, but I doubt that this is so. This case does not involve a statute such as Section 16(3)(a) of the Interstate Commerce Act (43 Stat. 633), which was considered in *Midstate Horticultural Co. v. Pennsylvania R.R.*, 320 U.S. 356, 64 S.Ct. 128, 88 L.Ed. 96 (1943). We do not deal with a federal statute which either creates a limitation or conditions a right upon timely action. We deal with a statute which does no more than prescribe the nature of the offer which the carrier may make.

4. This result was reached by the Court of Appeals for the Seventh Circuit in *John Morrell & Co. v. Chicago, Rock Island & Pacific R.R.*, 495 F.2d 331 (7th Cir. 1974). I do not base the result here upon that decision because I regard as arbitrary the characterization of the notice of disallowance there involved as a qualified disallowance. The notice read (at 332): "In the circumstances, have no option but to hereby disallow the claim."

■ I think that any other rule is unjust. When the carrier sent its letter of July 17 (above quoted), it certainly led the plaintiff to believe that the claim was not disallowed and that there was no necessity at that time to consider a lawsuit. As of July 17, unless the carrier was being deliberately deceptive (and I do not intimate such), both parties believed that the claim was still open. Whether the action was deliberate or not, the plaintiff was misled by an act of the defendant, and the carrier ought not, as a matter of simple justice, be allowed to benefit from that act.

Under the facts here, the plaintiff had no reason to believe, as of July 17, 1972 (the date of defendant's reconsideration letter), that his claim would not be paid. Did Congress intend that there be some technical triggering of the running of a limitations period without regard to the intentions of either party? Or did it intend that the shipper, as a reasonably prudent person, should have two years to start his suit after he knew that he would not be paid? Since the language was put in the statute for the benefit of the shipper, I would think the latter.

■ It cannot be doubted that a carrier may not discriminate in the application of its rules, regulations, and tariffs and that a carrier may not waive or be estopped to assert the requirements of its tariffs or bills of lading, including limitations provisions.[5]

■ The courts comprising the majority have treated the problem as one of .waiver or estoppel and have uniformly assumed that discrimination results from a reconsideration of a disallowance by a carrier without saying why. I do not view the problem as one of waiver or estoppel. I consider the question to be: What constitutes the notice of disallowance which starts the statute to run? If, however, I felt that discrimination would result from the rule which I have announced, then I would not be free to announce it—opposed as it would be to the policy of the Interstate Commerce Act.

The statute allows the carrier to trigger the commencement of the limitation period. If the problem of discrimination revolves about the date of disallowance, then the Act gives the carrier a carte blanche to discriminate. It does not prevent it from giving the ordinary customer prompt notice of disallowance and the favored customer a delayed notice or none at all. It simply is not realistic to discuss discrimination in terms of acts which start periods of limitation, because a carrier wanting to discriminate would simply pay the claim. Deep and lasting commercial friendships probably do not develop out of acts which extend the irritations of lawsuits. Given the latitude which law now gives the carrier, it is difficult to see that a good-faith reconsideration by a carrier of a written notice of disallowance given to one customer constitutes a discrimination against those who are not given similar reconsideration. If Customer A's claim is rejected and the carrier never has reason to doubt the validity of its action, A certainly is not the object of discrimination if Customer B's claim, once rejected, is reconsidered because the carrier in good faith questions its initial act. This is especially so when we consider that the carrier on a reconsideration could pay the claim. If, of course, a single letter of disallowance, isolated from the carrier's total conduct, starts the statute as a matter of law, then acts of reconsideration, if given effect, would result in discrimination. I quarrel with the court-developed rule that isolates the single act. If the rule announced here—i. e., that the statute begins to run on that date when the carrier can be said, in light of the totality of its conduct, to have finally disallowed the claim—is uniformly applied, I see no discrimination. I see instead a rule which permits mistakes to be corrected, which encourages the settlement of claims short of litigation, which prevents a carrier, inadvertently or otherwise, from misleading the shipper, and which accomplishes rather than thwarts the will of Congress. The rule which I an-

**5.** *Midstate Horticultural Co. v. Pennsylvania R.R., supra,* n.3; *Texas & Pacific Ry. v. Leatherwood,* 250 U.S. 478, 39 S.Ct. 517, 63 L.Ed. 1096 (1919); *A. J. Phillips Co. v. Grand Trunk Western Ry.,* 236 U.S. 662, 35 S.Ct. 444, 59 L.Ed. 774 (1915).

nounce may not be as easily administered as the majority rule, but, as I have read the cases, it has not seemed to me that in any of them it would have been difficult to determine when a final disallowance occurred.

Let judgment be entered in favor of the plaintiff and against the defendant in the sum of Five Thousand Four Hundred Dollars ($5,400.00) with interest at six percent (6%) from July 17, 1972.