**NORTH AMERICAN PHILIPS CORPORATION, Plaintiff,**

v.

**EMERY AIR FREIGHT CORPORATION, Defendant.**

No. 73 Civ. 2994.

United States District Court, S. D. New York.

May 20, 1977.

520

Rein, Mound & Cotton, New York City, for plaintiff; Eugene Wollan, C. Raymond Nelson, New York City, of counsel.

Bigham, Englar, Jones & Houston, New York City, for defendant; John V. McAuliffe, New York City, of counsel.

GAGLIARDI, District Judge.

This is an action by plaintiff North American Phillips Corporation ("Norelco") against defendant Emery Air Freight Corporation ("Emery") to recover damages in the sum of $114,003.00. This sum represents the value of a truckload of plaintiff's Norelco Speed Shavers which were hijacked while in the defendant's possession. The

case was removed to this court from the Supreme Court of the State of New York on the ground that the rights and liabilities of the parties are determined by the Federal Aviation Act of 1958, 49 U.S.C. § 1301 *et seq.* The case was submitted to the court on the pleadings, transcripts of pre-trial testimony and stipulated facts.

Plaintiff imports, distributes, and sells Norelco Speed Shavers. Defendant as an air freight forwarder is an indirect "air carrier" within the meaning of the Federal Aviation Act, 49 U.S.C. § 1301(3), and is certified as such by the Civil Aeronautics Board ("CAB") pursuant to that Act. On or about October 28, 1971, plaintiff requisitioned 1,250 cartons of Norelco Speed Shavers from the Pacific Freeport Warehouse in Sparks, Nevada, to be delivered to plaintiff in New York City. Pacific Freeport Warehouse, acting as Norelco's agent, retained Emery to deliver the shipment. Pacific Freeport Warehouse prepared a Straight Bill of Lading-Short Form, which originally designated a motor carrier as the means of transportation from Nevada to New York, but was later changed to designate "Air Freight" as the means of transportation. This bill of lading contained no declaration of value for the shipment. It was signed by Mr. E. J. Tosolini, the owner of Parcel Delivery Service, acting as Emery's agent, when the goods were accepted from Pacific Freeport Warehouse.

The shipment was delivered overland to San Francisco where Emery engaged United Air Lines to transport it, by air, to New York. Two days after arrival in New York, Emery divided the shipment into two truckloads and dispatched them to Norelco in Long Island City. One, containing 795 cartons of Norelco Speed Shavers, having a market value of $114,003.00, was hijacked, and its contents were never recovered.

On December 7, 1971, Norelco submitted a written claim for the entire value of the lost shipment. On December 21, 1971, Emery responded by tendering a check for $10,527.50, accompanied by an explanation that its liability was limited to 50 cents per pound since no higher value had been declared.[1] A little over a year later, on December 28, 1972, counsel for plaintiff returned the check with a covering letter disputing Emery's claim of limited liability. Norelco instituted suit on January 30, 1973 for the full market value of the shipment.

Two of the defendants' asserted affirmative defenses,[2] which the court finds applicable to this case as elaborated *infra*, bar plaintiff's claim for relief. These defenses are predicated upon the applicability of Emery's Airfreight Rules Tariff No. 2, CAB No. 45 on file with the CAB pursuant to the Federal Aviation Act, 49 U.S.C. § 1373(a).[3]

---

1. Such limitation of liability was pursuant to Emery's Tariff Rules 55 and 95 on file with the Civil Aeronautics Board. See footnote 2, *infra*.

2. In addition, Emery asserted a third affirmative defense relying on its Tariff Rules 55 and 95 limiting its liability in the alternative to 50 cents per pound or $10,527.50. Because the court finds Emery's other two affirmative defenses applicable to preclude any liability, the court need not discuss Emery's third affirmative defense.

3. 49 U.S.C. § 1373(a) provides:
   § 1373. Tariffs of air carriers
   Filing, posting, and publication; rejection of tariffs
   (a) Every air carrier and every foreign air carrier shall file with the Board, and print, and keep open to public inspection, tariffs showing all rates, fares, and charges for air transportation between points served by it, and between points served by it and points served by any other air carrier or foreign air carrier when through service and through rates shall have been established, and showing to the extent required by regulations of the Board, all classifications, rules, regulations, practices, and services in connection with such air transportation. Tariffs shall be filed, posted, and published in such form and manner, and shall contain such information, as the Board shall by regulation prescribe; and the Board is empowered to reject any tariff so filed which is not consistent with this section and such regulations. Any tariff so rejected shall be void. The rates, fares, and charges shown in any tariff shall be stated in terms of lawful money of the United States, but such tariffs may also state rates, fares, and charges in terms of currencies other than lawful money of the United States, and may, in the case of foreign air transportation, contain such information as may be required under the laws of any country in or to which an air carrier or foreign air carrier is authorized to operate.

Predicated upon the application of its tariff rules, Emery asserts as a first affirmative defense that pursuant to Tariff Rule 50(A) it "shall not be liable for any loss . . . or non-delivery or other result not caused by its own negligence", and, therefore, it cannot be liable for the loss due to hijacking. For its second affirmative defense, Emery relies on Tariff Rule 120(A) which provides that Emery shall not be liable for any claim unless the action "is brought within one (1) year after the date written notice is given to the claimant that [Emery] has disallowed the claim in whole or in part." Under this Rule, Emery claims that since this suit was commenced more than one year after it gave Norelco written notice of partial disallowance of the claim, the action is time-barred.

■ Plaintiff contends that these affirmative defenses cannot be applied because the underlying tariff provisions are inapplicable. Plaintiff cites a regulation of the CAB, 14 C.F.R. § 296.73 [4] which requires the defendant as an air freight forwarder to prepare an airway bill and supply copies at the time of shipment to the plaintiff-consignee. According to the regulation, the airway bill shall contain notice of the applicable limitation of liability and the declared value of the shipment. Plaintiff asserts that the regulation requires the delivery of the airbill as a condition precedent to the enforcement of Emery's tariff provisions on file with the CAB, that defendant failed to deliver the airbill, and that, therefore, defendant cannot rely upon affirmative defenses based upon its tariff rules.

It is this court's conclusion that the delivery of the airbill is not a condition precedent to the applicability and enforcement of Emery's tariff provisions. As a result, the court need not decide the only factual dispute in this case, submitted for determination on the basis of deposition testimony, namely whether Emery's agent, Tosolini, prepared an Emery Air Freight Corporation Airbill and deposited it with Norelco's agent, Pacific Freeport Warehouse, at or about the time shipment was delivered to Tosolini. Emery's two affirmative defenses are valid irrespective of the delivery of the airbill.

In this case the valid Emery tariff on file with the CAB as required by 49 U.S.C. § 1373(a) constitutes the contract of carriage between the parties as a matter of law. In *Tishman & Lipp, Inc. v. Delta Air Lines*, 413 F.2d 1401, 1403–04 (2d Cir. 1969), the Second Circuit Court of Appeals held:

Tariffs filed with the Civil Aeronautics Board if valid, are conclusive and exclusive, and the rights and liabilities between airlines and their passengers are governed thereby. *Slick Airways, Inc. v. United States*, 292 F.2d 515, 154 Ct.Cl. 417 (1961); *Lichten v. Eastern Air Lines, Inc.*, 189 F.2d 939, 25 A.L.R.2d 1337 (2d Cir. 1951), 49 U.S.C. § 1373. Limitations of liability in tariffs required to be filed by air carriers with the Civil Aeronautics Board are binding on passengers and shippers whether or not the limitations are embodied in the transportation documents. *Vogelsang v. Delta Air Lines, Inc.*, 302 F.2d 709 (2d Cir. 1962), *cert. denied*, 371 U.S. 826, 83 S.Ct. 46, 9

---

4. 14 C.F.R. § 296.73 provides in pertinent part:

§ 296.73 Preparation of airwaybills and manifests.

(a) Each holder of an operating authorization shall prepare an accurate airwaybill for each shipment consigned for transportation to a direct air carrier by such holder in the capacity of an air freight forwarder or international air freight forwarder and a copy thereof shall be supplied to the consignor and to the consignee of each such shipment. Each such airwaybill shall contain:

(1) The following information:

(i) Name and address of consignor, consignee, and forwarder.

(ii) A limitation of liability statement.

(iii) Number of packages in shipment.

(iv) Total weight (both actual and dimensional, where applicable).

(v) Description of commodities.

(vi) Point of origin and destination of shipment.

(vii) Declared value of shipment.

(viii) Date of airwaybill preparation.

(ix) Name of employee or agent preparing airwaybill.

*    *    *    *    *    *

L.Ed.2d 65 (1962); *cf. Herman v. Northwest Airlines, Inc.*, 222 F.2d 326 (2d Cir.), *cert. denied* 350 U.S. 843, 76 S.Ct. 84, 100 L.Ed. 751 (1955).

Plaintiff attempts to analogize to cases involving the Warsaw Convention and the Interstate Commerce Act, 49 U.S.C. § 1 *et seq.* in support of its claim that a failure to deliver an airbill precludes the application of the tariff provisions. *See, e. g., Lisi v. Alitalia-Linee Aeree Italiane, S.p.A.*, 370 F.2d 508 (2d Cir. 1966), *aff'd*, 390 U.S. 455, 88 S.Ct. 1193, 20 L.Ed.2d 27 (1968); *Chandler v. Aero Mayflower Transit Co.*, 374 F.2d 129 (4th Cir. 1967). Neither situation is analogous. *See, Vogelsang v. Delta Air Lines, Inc., supra* at 712–13 (Warsaw Convention); *Slick Airways, Inc. v. United States*, 292 F.2d 515, 518–20, 154 Ct.Cl. 417 (1961); *Lichten v. Eastern Airlines*, 189 F.2d 939, 941 (2d Cir. 1951) (Interstate Commerce Act). The language of the Warsaw Convention specifically requires delivery of a passenger ticket or baggage check as a precondition to the effectiveness of provisions of the convention which exclude or limit liability. Articles 3(2) and 4(4), 49 Stat. 3015, 3016 (1929).[5] Similarly, the Interstate Commerce Act specifically mandates that a receipt or bill of lading issue and that a released value be in writing as a condition precedent to a carrier's limiting its liability. 49 U.S.C. § 20(11).

The Federal Aviation Act contains no comparable provision which would indicate that the issuance of an airbill is a condition precedent to the applicability of a tariff rule duly filed pursuant to § 403 of the Federal Aviation Act, 49 U.S.C. § 1373. The Act itself makes no mention of an airbill requirement. The regulations promulgated by the CAB contained in 14 C.F.R. § 296.73 do state that a copy of an airbill "shall" be issued and that it "shall" contain, *inter alia*, a statement of limitation of liability. However, there is nothing to indicate that the CAB in promulgating this regulation intended that non-compliance with this requirement would preclude application of a shipper's duly filed tariff.[6] In fact, the application of duly filed tariff provisions as the contract of carriage between the parties without preconditions or exceptions is an integral part of the policy behind 49 U.S.C. § 1373. In *Lichten v. Eastern Airlines, supra*, 189 F.2d at 942, the plaintiff argued that the carrier's breach of contract deprived it of the benefit of exculpatory provisions contained in the tariff. In rejecting that argument the court stated

---

5. Warsaw Convention Article 3(2) provides:

(2) The absence, irregularity, or loss of the passenger ticket shall not affect the existence or the validity of the contract of transportation which shall none the less be subject to the rules of this convention. Nevertheless, if the carrier accepts a passenger without a passenger ticket having been delivered he shall not be entitled to avail himself of those provisions of this convention which exclude or limit his liability.

Warsaw Convention Article 4(4) provides in pertinent part:

(4) The absence, irregularity, or loss of the baggage check shall not affect the existence or the validity of the contract of transportation which shall none the less be subject to the rules of this convention. Nevertheless, if the carrier accepts baggage without a baggage check having been delivered, . . . the carrier shall not be entitled to avail himself of those provisions of the convention which exclude or limit his liability.

6. An analysis of § 296.73 in the context of C.F.R. Title 14 supports the conclusion that the issuance of an airbill is not a condition precedent to the effectiveness of the tariff rules as the exclusive contract of carriage. 14 CFR 296.73 is the last of three brief sections comprising Subpart G of Part 296 of the CAB Regulations. Subpart G is entitled "Requirements for the Maintenance and Retention of Records and Reporting Requirements." Section 296.71 is entitled "Record-Retention Requirements" and refers back to Part 249, "Preservation of Air Carrier Accounts, Records and Memoranda." Section 296.72 is entitled "Reporting Requirements" and refers back to Part 239 (Reporting Data Pertaining to Freight Loss and Damage Claims by Certain Air Carriers and Foreign Route Air Carriers) and Part 244 (Uniform System of Accounts and Reports for Air Freight Forwarders . . .). The final section in this triumverate comprising Subpart G is § 296.73, the section under discussion, and is entitled "Preparation of Airwaybill and Manifest." By failing to connect the issuance of an airbill under § 296.73 with any precondition to limiting liability, this court can only conclude that along with the other related regulations of Title 14 the CAB's intention in enacting § 296.73 was to regulate record keeping and reporting requirements.

that "[i]t overlooks . . . the far reaching effect of the principle of uniformity of treatment, which requires that the tariff be applied in all matters arising from the attempted performance of the contract." This "principle of uniformity" of air carrier rates and services to prevent discrimination and preferences is the fundamental policy behind 49 U.S.C. § 1373(b), prohibiting any deviation from the provisions of a duly filed tariff. *Transcontinental Bus System, Inc. v. CAB*, 383 F.2d 466, 474–5, (5th Cir. 1967), *cert. denied*, 390 U.S. 920, 88 S.Ct. 850, 19 L.Ed.2d 979 (1968). Because of this policy of uniformity "[t]he tariffs are both conclusive and exclusive; they may not be added to through references to outside contracts or agreements or understandings or promises." *United States v. Associated Air Transport, Inc.*, 275 F.2d 827, 833 (5th Cir. 1960); *see Tishman & Lipp v. Delta Air Lines, supra.*

■ In consideration of the strong public policy of governing all rights and liabilities between the parties to an air freight contract according to the provisions of the tariff, Emery's duly filed air freight tariff is valid unless the Federal Aviation Act statute or CAB regulation clearly mandates a different result.[7] In contrast to the cases involving the Warsaw Convention and the Interstate Commerce Act, there is no indication that delivery of an airway bill is a necessary prerequisite to the validity of the tariff. The court, therefore, finds Emery's Airfreight Rules Tariff No. 2 CAB No. 45, to be valid and the effective contract of carriage between the parties.

■ Emery's first affirmative defense relies on the application of its Tariff Rule 50(A) which provides:

The Forwarder shall not be liable for any loss, damage, delay, mis-delivery, or non-delivery or other result not caused by its own negligence.

This provision exempting Emery from liability without negligence is valid and must be given effect. *Lichten v. Eastern Airlines, Inc., supra* at 941. From the facts stipulated by both parties, the loss of the Norelco shavers was the result of a hijacking with no allegation of any negligent act or omission by the defendant. Therefore, under Rule 50(A), Emery is not liable for any damages resulting from the hijacking.

■ Alternatively, Emery's second affirmative defense also precludes Emery from paying any damages in this action. This defense relies on the application of Emery's Tariff Rule 120(A):

In the case of shipments destined to points in the United States . . . , the Forwarder shall not be liable in any action brought to enforce a claim . . . unless such action is brought within one (1) year after the date written notice is given to the claimant that the forwarder has disallowed the claim in whole or in part.

This tariff provision is valid and applicable to the facts of this case. Even if the court were to accept the plaintiff's analogy to the cases under the Warsaw Convention, holding that a failure to inform the passenger of limitation of liability contained in the Convention invalidates such limitations, the limitation on the time within which suit must be commenced contained in Emery's Tariff Rule 120(A) would still be valid and the plaintiff's suit thus time barred.

7. As additional support for the courts holding that an airbill need not be supplied as a precondition to the applicability of its tariff rules, 14 C.F.R. § 296.73 concludes with the following proviso:

Note: Where a forwarder desires to conduct an operation which entails the use of documentation different from that required herein, it is the responsibility of such forwarder to secure from the Board, in advance, permission to deviate from the requirements of this section.

Such permission was effectively granted when the CAB accepted Emery's Tariff Rule 45(A) which states that "[e]ach such shipment, irrespective of the form of shipping document accepted by the Forwarder in connection therewith, shall be subject to the Forwarder's Tariff. . . . ." Under these circumstances, where a Straight Bill of Lading-Short Form shipping document was accepted, § 296.73 cannot be applied to preclude the applicability of Emery's tariff.

The logic behind the distinction between limitation on liability and a limitation on the time in which suit must be commenced was clearly explained by the Second Circuit Court of Appeals in *Molitch v. Irish International Airlines*, 436 F.2d 42, 44 (2d Cir. 1970):

> In *Lisi* [cited *supra*] the court said that its holding would give the passenger "the opportunity to purchase additional flight insurance or take such other steps for his self-protection as he sees fit." 370 F.2d at 513. Notification of a two-year limit on bringing an action would have no such effect. A prospective passenger is unlikely to care about the length of the statute of limitations and it is difficult to conceive of any protective measures that he might take prior to boarding the plane were he notified of the limitation. Extension of the requirement of notice to the statute of limitations would be both meaningless and unjustified.

The same reasoning is applicable to refute plaintiff's argument that failure to provide it with an airbill invalidates any provision in defendant's tariff limiting the time in which a claimant must bring suit.

According to the stipulated facts, Norelco submitted its initial claim for the entire loss, $114,003, on December 7, 1971. In response to that claim, Emery, on December 21, 1971, transmitted a check for $10,527.50 and annexed a memorandum explaining that "[b]ecause no declared value was shown on our air bill, our liability is limited to $.50 per pound based on the shipment's total weight of 21,055 pounds." The check

and memorandum constituted a disallowance in part and started the running of the one year limitation period. Norelco, on December 28, 1972, rejected Emery's offer, returned the $10,527.50 check, and renewed its claim to the full $114,003. This action was not commenced until January 30, 1973, approximately six weeks after the expiration of the time limitation of Rule 120(A). Consequently, plaintiff's commencement of this action was untimely and its claim must be dismissed.[8]

In conclusion, under either of these affirmative defenses, Norelco is not entitled to damages and its claims must be dismissed. The clerk of the court shall enter judgment in favor of Emery dismissing the action with prejudice and without costs.

So Ordered.

---

8. Correspondence after the one year period has elapsed is not effective to waive the limitation period. On January 8, 1973, one month after the one year period had elapsed, Emery returned the offered check with a covering letter which concluded with the following:

> Because you have not provided any evidence that our settlement was unjust, we are returning our draft in the amount of $10,527.50. However, although it is beyond the time for filing suit, if you feel we have missed something in our investigation, we will be happy to investigation [sic] any further documentation you can provide.

Plaintiff responded by letter dated January 16, 1973 again returning the check and two weeks later this action was commenced. Unlike the situation in *John Morrell & Co. v. Chicago, Rock Island & Pacific R.R. Co.*, 495 F.2d 331 (7th Cir. 1974) and *Chappell v. New York O. & W. Ry. Co.*, 248 App.Div. 804, 289 N.Y.S. 52 (1936) there was no correspondence or negotiations between the parties until after the one year limitation period had expired. Emery's letter of January 8, 1973 only reaffirmed the original memorandum of disallowance and indicated that it was "beyond the limitation for filing suit." The letter did not waive or otherwise affect the already expired limitation period. *See Burns v. Chicago, M. St. P. & Pas. R. Co.*, 192 F.2d 472, 476–77 (8th Cir. 1951) and cases cited therein.