William A. CORDINGLEY,
Plaintiff-Appellee,

v.

ALLIED VAN LINES, INC.,
Defendant-Appellant.

No. 76–3466.

United States Court of Appeals,
Ninth Circuit.

Oct. 25, 1977.

Ray F. Koby, argued, Swanberg, Koby, Swanberg & Matteucci, Great Falls, Mont., for plaintiff-appellee.

Before WRIGHT and KILKENNY, Circuit Judges, and HARRIS, Senior District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

Allied Van Lines (Allied), a common carrier, appeals from a district court judgment awarding damages for household goods destroyed in shipment.

The court below held that appellee's claim for damages was not time-barred under the terms of the bill of lading.[1] The holding was based on the court's conclusion that, "in light of the totality of its conduct," Allied could not be said to have given the plaintiff notice of disallowance of his claim. Without such notice, the bill of lading's limitations period could not begin to run and the suit on the claim could not be barred.

The focus of this appeal is the test employed by the district court in its determination that Allied had not given notice of disallowance. For the reasons given below, we affirm the decision of the district court.

FACTS

Cordingley delivered a quantity of household goods to Allied in Des Moines, Iowa, for shipment to Great Falls, Montana. The first shipment was delivered to Great Falls without incident. The second, shipped in July, 1972, contained a large mirror and a small one, both of which were damaged by fire en route. The district court found the value of the mirrors to be $5,000 and $400, respectively.

Bills of lading were issued for each shipment. Each bill contained a provision limit-

James R. Walsh, argued, Smith, Emmons, Baillie & Walsh, Great Falls, Mont., for defendant-appellant.

* Of the Northern District of California.

1. *Cordingley v. Allied Van Lines,* 413 F.Supp. 1398 (D. Montana 1976). Section 6 of the Uniform Bill of Lading states:

"SECTION 6. As a condition precedent to recovery . . . suit must be instituted against carrier within two (2) years and one (1) day from the date when notice in writing is given by carrier to the claimant that carrier has disallowed the claim. . . ."

ing the carrier's liability for "articles of extraordinary value" unless they were specifically listed.[2] Cordingley was neither advised of this provision nor given an opportunity to list the mirrors as "articles of extraordinary value." He did not see the bills of lading for either shipment until Allied had completed the trip.

When he learned of the damage, Cordingley promptly filed a claim with Allied. Allied's Customer Service Department responded by letter of May 16, 1973 which included this paragraph:

> Pertaining to the two antique mirrors, please be advised that under Rule 12 of the tariff rules and regulations 144C, which is approved by the Interstate Commerce Commission, these mirrors are classified as items of extraordinary value, which should have been listed on the bill of lading. Thus Allied Van Lines cannot accept any liability.

Cordingley responded by letter on June 20, 1973, writing in part:

> As far as I am concerned, the matter is not closed. It is not my intent to try to stick someone but I certainly think reimbursement is in order.
>
> *   *   *   *   *   *
>
> Secondly, I do not see why I should not be reimbursed when one of your drivers burns up a load. I do not know what is

meant by not having the items listed on the bill of lading. Mr. Cathcart [Allied's representative] was fully aware of their value as it was discussed a number of times.

Allied's reply letter of July 17, 1973, was the last communication between the parties prior to this suit. It read in part:

> Thank you for your letter of June 20, 1973, and with the addition of the information contained in this letter, I have requested additional information from various parties involved.
>
> Upon receipt of requested information, I shall be able to take further consideration regarding your claim.
>
> I shall try to be in touch with you within the very near future.

Cordingley sued on June 27, 1975.

## THE PERIOD OF LIMITATIONS

Allied's principal defense was that Cordingley's suit was time-barred. Title 49 U.S.C. § 20(11) authorizes carriers to incorporate limitation periods, governing suits on claims against them, within their rules, contracts or regulations. Such limitations are lawful only so long as the period prescribed is not shorter than two years.[3]

█ The district court correctly recognized that § 20(11), which governs a bill of

---

**2.** "SECTION 1. The carrier shall be liable for physical loss of or damage to any articles from external cause while being carried or held in storage in transit EXCEPT for condition or flavor of perishable articles, and EXCEPT documents, currency, money, jewelry, watches, precious stones or articles of extraordinary value which are not specifically listed on the bill of lading. . . ."

**3.** 49 U.S.C. § 20
"(11) . . . Provided further, That it shall be unlawful for any such receiving or delivering common carrier to provide by rule, contract, regulation, or otherwise a shorter period for the filing of claims than nine months, and for the institution of suits than two years, such period for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice . . . ."

We note at the outset that § 20(11), which governs this dispute, was enacted to benefit shippers by requiring that they be given notice of disallowance before the limitation period begins to run. The problem arose from the Supreme Court's decision in *Louisville Cement Co. v. Interstate Commerce Commission,* 246 U.S. 638, 38 S.Ct. 408, 62 L.Ed. 914 (1917), holding that the two-year limitation on shippers' claims was jurisdictional.

The section's legislative history demonstrates congressional concern that

> "[i]n the absence of such a [notice] provision it is possible for the carrier to so delay consideration of the claim that the two-year period has expired before the claimant is aware that his claim has been rejected."

H.R. No. 456, 66th Cong., 1st Sess. 79, 81 (1919). *See also, Return of the Railroads to Private Ownership: Hearings on H.R. 4378 Before the Comm. on Interstate and Foreign Commerce,* 66th Cong., 1st Sess., Vol. 3 at 2899 (1919).

lading's limitation on suits *by shippers against carriers,* is *not* a statute which conditions the right of recovery upon timely filing of suit or which places a time limitation on the right to recovery.[4] That section merely authorizes the carrier to fix the period of limitation and, by specifying that the period does not begin to run until there has been notice of disallowance, allows the carrier to choose the time when the period begins to run.

By the terms of the bill of lading and of the statute, Cordingley's suit is barred only if Allied's letter of May 16, 1973, constituted a disallowance of the claim: The district court, after examining the totality of the carrier's conduct, concluded that the May 16 letter was not such a disallowance.

In reaching this conclusion, Chief Judge Smith considered Allied's May 16 letter in the context of the entire exchange of communications between the parties. He did not characterize Allied's letter as a "qualified disallowance."[5] Nor did he conclude that the letter of July 17, 1973 waived a limitation period that had begun to run on May 16 or that the carrier's post-May 16 actions estopped it from asserting the limitations period as a defense to suit.[6]

The judge focused instead on Allied's letter of July 17, written in response to Cordingley's letter of June 20,[7] using that letter

---

**4.** *Compare* 49 U.S.C. § 16(3)(a):

"All actions at law by carriers subject to this chapter for recovery of their charges or any part thereof shall be begun within two years from the time the cause of action accrues . . . ."

An earlier version of this same section, differing materially only in the length of the limitation period, was construed by the Supreme Court in *Midstate Horticultural Co., Inc. v. Pennsylvania Railroad Co.,* 320 U.S. 356, 64 S.Ct. 128, 88 L.Ed. 96 (1943). In *Midstate* the Court held that the expiration of the period of limitation barred suit, notwithstanding the parties' express agreement to waive the limitation.

**5.** The district court chose not to follow the "qualified disallowance" rationale of *John Morrell & Co. v. Chicago, Rock Island & Pacific R. R.,* 495 F.2d 331 (7th Cir. 1974). In affirming the district court's decision we, too, find it unnecessary to embrace *Morrell's* reasoning.

**6.** This is not a case of waiver or estoppel with regard to the bill of lading's limitations.

Carriers' arguments that a shipper has waived, or is estopped from asserting, a limitation period have been explicitly rejected by the Supreme Court in actions concerning a limitation period set by the Interstate Commerce Act. *Midstate Horticultural Co., Inc. v. Pennsylvania Railroad Co.,* 320 U.S. 356, 64 S.Ct. 128, 88 L.Ed. 96 (1943).

The argument has been rejected in cases concerning shipment terms set by a bill of lading or tariff. *Chesapeake and Ohio Ry. v. Martin,* 283 U.S. 209, 51 S.Ct. 453, 75 L.Ed. 983 (1931); *Davis v. Henderson,* 266 U.S. 92, 45 S.Ct. 24, 69 L.Ed. 182 (1924); *Georgia, Florida & Ala. Ry. v. Blish,* 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948 (1916). *See also Burns v. Chicago, Milwaukee, St. Paul & Pacific R. R.,* 192 F.2d 472 (8th Cir. 1951); *Holford v. Louisville & Nashville Railroad Co.,* 266 F.Supp. 408 (W.D.Tenn.1967).

Since the court below properly found that Allied had not given notice of disallowance, questions of waiver and estoppel are irrelevant. Even so, it is not certain that an estoppel can never arise to bar assertion of a bill of lading's time limitation. *See Chesapeake and Ohio Ry. v. Martin, supra,* 283 U.S. at 222, 51 S.Ct. at 458. ("Whether under any circumstances the shipper may rely upon [estoppel] in avoidance of the time limitation clause of the bill of lading, we need not now determine.")

Cases that state the rule as certain appear to extend *Midstate Horticultural Co., Inc. v. Pennsylvania Railroad, supra,* beyond its actual reach. *See, e. g., Burns v. Chicago, Milwaukee, St. Paul & Pacific R. R., supra* at 476; *Holford v. Louisville & Nashville Railroad Co., supra* at 409.

Although not essential to our holding, we think equitable principles of waiver and estoppel can be applied in a dispute arising under § 20(11) when the defendant, who has the power to commence the running of the limitation, induces the plaintiff to refrain from instituting suit. *See American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 559, 94 S.Ct. 756, 769, 38 L.Ed.2d 713 (1974) ("[T]he mere fact that a federal statute providing for substantive liability also sets a time limitation upon the institution of suit does not restrict the power of the federal courts to hold that the statute of limitations is tolled under certain circumstances not inconsistent with the legislative purpose. . . ."); *Glus v. Brooklyn E. Dist. Terminal,* 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959) (Federal Employer's Liability Act limitation tolled where defendant misled plaintiff as to duration).

**7.** This case is distinguishable from those in which claimants have urged that settlement negotiations subsequent to disallowance indicate revocation of disallowance, waiver, or estoppel. *See, e. g., Polaroid Corp. v. Hermann Forwarding Co.,* 541 F.2d 1007 (3rd Cir. 1976);

to probe the meaning of the May 16 letter. Specifically, he found that Allied's second letter showed that Allied had not intended its first letter, at the time it was written, to be a final disallowance.

■ To be effective a notice of disallowance must clearly convey to the claimant the message that his claim has been rejected. A "clear, final and unequivocal" notice, whether legally correct or not, will begin the running of the bill of lading's limitation period. *Polaroid Corp. v. Hermann Forwarding Co.*, 541 F.2d 1007, 1012 (3rd Cir. 1976).

■ The clarity of the notice is properly ascertained by viewing it in context. Standing alone, Allied's May 16 letter may appear to disclaim liability. It becomes evident, however, when viewed with Allied's own related correspondence, that its agent did not intend it as a final disallowance.

˙ In his opinion below, the judge inquired:

Did Congress intend that there be some technical triggering of the running of a limitations period without regard to the intentions of either party? Or did it intend that the shipper, as a reasonably prudent person, should have two years to start his suit after he knew that he would not be paid?

*Burns v. Milwaukee, St. Paul & Pacific Railroad Co.*, 192 F.2d 472 (8th Cir. 1951).

Here settlement negotiations never began because Cordingley was not informed that consideration of *his entire claim* had finally terminated. On the contrary, Allied promised continued consideration.

8. "The carrier, however, should not be allowed to trigger the running of the limitations period except by means of a notice which makes it clear to the claimant that this power has been exercised. It is easy enough to draft such a notice in words which can be understood in only one way. But when the agent of the common carrier chooses other words, it assumes the risk that a trier of fact will find that it has not exercised that statutory power."
541 F.2d at 1014 (Gibbons, J., dissenting).

9. It should be emphasized that the inquiry undertaken here relates to the *carrier's intention* as revealed by *his* written communications. The shipper's state of mind is not a necessary element of the inquiry in this case.

*Cordingley v. Allied Van Lines,* 413 F.Supp. 1398, 1402 (D. Montana 1976).

■ We agree with the trial court that Congress did not intend that a determination as to notice of disallowance must be made without adequate inquiry into the carrier's intentions. Our decision is influenced as well by Judge Gibbons' thoughtful dissent in *Polaroid Corp. v. Hermann Forwarding Co., supra* at 1013.[8]

■ Adopting such an analytical approach is fully consistent with Congress' underlying concern for avoiding uncertainty and discouraging discrimination.[9] It has been urged on appeal that an affirmance will reduce certainty in this area of commerce and open the door to carrier discrimination in handling shippers' claims.

The district court thoroughly discussed the problem of discrimination and correctly concluded that the possibility of discrimination is not increased when the totality of the *carrier's* conduct is considered.[10]

## DAMAGES

■ The district court properly held that under the circumstances in this case Cordingley's failure to list the mirrors as items of extraordinary value did not bar recovery.[11]

Furthermore, the approach we adopt comports with elementary principles of contract law. The interpretation that the parties themselves give a contract, as manifested by their conduct subsequent to formation, is accorded great weight in attempts to ascertain the parties' intent. *Acheson v. Falstaff Brewing Corp.*, 523 F.2d 1327 (9th Cir. 1975); *Riess v. Murchison*, 329 F.2d 635 (9th Cir. 1964).

10. *Cordingley v. Allied Van Lines, supra* at 1402.

11. *Cf. Boeing Co. v. U.S.A.C. Transport, Inc.*, 539 F.2d 1228 (9th Cir. 1976) (absent agreement to the contrary, liability limitation not effective unless bill of lading is delivered on acceptance of goods). *See also New York, N.H. & H. R. Co. v. Nothnagle,* 346 U.S. 128, 73 S.Ct. 986, 97 L.Ed. 1500 (1953); *Vandenbergh v. Allied Van Lines, Inc.,* 137 Mont. 327, 351 P.2d 537, *cert. denied* 364 U.S. 830, 81 S.Ct. 69, 5 L.Ed.2d 57 (1960) (applying federal law).

Allied concedes that the award of $400 was proper for the small mirror which was totally destroyed. It challenges the award of full value, $5,000, for the large mirror and contends that it was based on insufficient evidence. Specifically, it contends that, since the claimant did not show total destruction, he cannot recover full value.

There was sufficient evidence in the record from which the trial court could conclude that repair efforts would not restore the mirror, a family heirloom, to its original condition and that Cordingley's actual loss was $5,000. A trial court is allowed wide discretion in determining the sufficiency of a shipper's proof of damages. *Thousand Springs Trout Farm v. IML Freight Co.,* 558 F.2d 539 (9th Cir. 1977).

The judgment of the trial court is AFFIRMED.

GEORGE B. HARRIS, District Judge, concurring in the result:

Although I believe that the result reached here is the proper one, I offer a comment on the route used to reach it.

The May 16, 1973 letter from Allied, which stated that Allied "cannot accept any liability" for the mirrors in question, appeared to give notice to Cordingley that his claim was being disallowed. *See, e. g., North American Philips v. Emery Air Freight,* 432 F.Supp. 519, 521 (S.D.N.Y. 1977). My Brethren, however, adopt the "totality of conduct" test articulated by the district court below and re-interpret this letter in the light of the later correspondence between the parties.

Under the "totality of conduct" test, Allied's May 16 letter cannot be held to have amounted to a final disallowance of Cordingley's claim, although this approach skirts dangerously close to the "no waiver—no estoppel" rule which has grown up in this area. Perhaps justice would be better served if we were to find that equitable considerations are indeed appropriate to reach a just result and thereby avoid the harshness which has characterized several earlier decisions on similar fact situations.

I concur.