395 A.2d 572

**CUMBERLAND BUILDINGS COMPANY, INC.**

v.

**Robert W. BLANCHETTE, Richard C. Bond, and John H. McArthur as trustees of the property of Penn Central Transportation Company, and Burlington Northern Railroad, Appellants.**

Superior Court of Pennsylvania.

Argued June 16, 1978.

Decided Oct. 27, 1978.

Reargument Denied Dec. 29, 1978.

32

David C. Eaton, Harrisburg, with him James R. Humer, Carlisle, for appellants.

George F. Douglas, Jr., Carlisle, for appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

CERCONE, Judge:

Defendant-appellants, the trustees of the property of Penn Central Transportation Company (Penn Central) and Burlington Northern Railroad (Burlington), appeal from the order of the court below dismissing exceptions to an adjudication and award entered in favor of plaintiff-appellee, Cumberland Buildings Company, Inc. (Cumberland). For the reasons appearing below, we reverse.

In July of 1971, Cumberland engaged Penn Central and Burlington to transport certain building materials [1] from the Butler Manufacturing plant in Galesburg, Illinois to Bellaire, Pennsylvania. When the cargo arrived at its destination it was found to be in damaged condition.[2]

On or about August 25, 1971, Cumberland submitted a claim to Penn Central in the amount of $10,606.80 as the replacement cost for the damaged materials. Cumberland's complaint in trespass alleging that the damage occurred while the materials were in transit was filed on August 1, 1974. A nonjury trial conducted on May 31, 1977 resulted in an adjudication and award for Cumberland against both carriers in the amount of $10,608.80. Exceptions to the adjudication and award were dismissed and this appeal followed.

The materials in question were shipped subject to the provisions of a uniform straight bill of lading approved by the Interstate Commerce Commission. Section 2(b) of the bill of lading provides in pertinent part:

"As a condition precedent to recovery . . . suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where . . . suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable and such claims shall not be paid."

The foregoing provision is in conformity with Section 20(11) of the Interstate Commerce Act, 49 U.S.C. § 20(11), which states in relevant part:

1. The materials in question were essentially steel building components needed by Cumberland to construct a building for Agway, Inc., near Elizabethtown, Pennsylvania.

2. Delivery of Cumberland's total order from Butler entailed fifteen or sixteen freight cars, with shipment occurring at various times during July, 1971. The damaged material was confined to three freight cars of a three or four car delivery.

". . . it shall be unlawful for any such receiving or delivering common carrier to provide by rule, contract, regulation, or otherwise a shorter period . . . for the institution of suits than two years, such period for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice."

The principal issue in the instant case is whether plaintiff-appellee instituted suit within two years and one day from the date of written notice that defendant-appellants had disallowed the claim. Obviously, this issue cannot be resolved without first determining at what point Cumberland was provided with notice of disallowance sufficient to meet the requirements of Section 20(11) of the Interstate Commerce Act, supra.

As previously mentioned, Cumberland's formal claim against defendants was filed on August 25, 1971. By letter of January 21, 1972, Penn Central advised Cumberland's general manager that it was rejecting the claim. This letter begins by noting that Penn Central's investigation of the matter had been hampered due to the fact that the damaged cargo had been unloaded by Cumberland prior to notifying Penn Central of the damage. The letter goes on to state that, nothing untoward had occurred during transit, and it appeared that the damage was attributable to inadequate packaging and protection. Most importantly, the concluding paragraph of this letter reads:

"Under these circumstances we must invoke Sec. 1(b) [sic] of the bill of lading contract as an act or default of the shipper and have no alternative but to advise *payment of claim is respectfully disallowed.*" (Emphasis added.)

Cumberland's general manager responded by letter on January 27, 1972, and stated, inter alia, that Penn Central's earlier letter contained a factual error. Specifically, Cumberland asserted that Penn Central's representative, Mr. Ebersol, was immediately notified of the damaged freight and had indeed conducted an inspection before most of the

damaged material was unloaded. In conclusion, Cumberland wrote: "I suggest that you review the facts with your Mr. Ebersol. At that time, I am certain you will reverse your decision and the claim can be paid." Penn Central responded in writing on February 3, 1972. Although this letter did not address Cumberland's assertion that Mr. Ebersol had in fact inspected the damaged cargo prior to unloading, it reaffirmed its earlier position that the damage was due to improper protection of the freight by the shipper. The letter concludes: "Considering all of the above factors, I must maintain our declination of January 21."

On June 15, 1972, Attorney George F. Douglas, Jr. wrote to Penn Central advising that he had been retained by Cumberland relative to their claim against Penn Central. The latter reads in pertinent part:

"My file also indicates that Mr. Ebersol of your Middletown office was notified as soon as the damaged material was discovered at its destination at Bellaire, Pennsylvania. Mr. Ebersol came to the site and took pictures. At that time most of the damaged material was still on your freight car.

\* \* \* \* \* \*

"Please give me your final position in view of the aforesaid information, so that I will know whether this claim is to be paid amicably, or whether I am to proceed with a court action."

Penn Central's reply letter of November 6, 1972, was the last relevant correspondence between the parties. In relevant part it states:

"We have conducted a very thorough investigation of the claim and it has been given serious review of the facts developed. However, we are still of the opinion that rail carrier liability does not exist and reiterate our two previous declinations of this claim."

Cumberland instituted suit on August 1, 1974.

Defendant-appellants contend, as they did in the court below, that Penn Central's letter of January 21, 1972, consti-

tuted an effective disallowance of Cumberland's claim; and since Cumberland did not file suit until August 1, 1974, or more than thirty months after notice of disallowance, its suit was barred by the two years and one day time limitation contained in the bill of lading. The court below, however, agreed with Cumberland's position that effective disallowance did not occur until the Penn Central letter of November 6, 1972, and therefore, suit was timely filed. We conclude that the lower court was in error.

In order to trigger the bill of lading's two year limitation period "the carrier's notice of disallowance must be clear, final and unequivocal." *Polaroid Corp. v. Hermann Forwarding Co.*, 541 F.2d 1007, 1012 (3rd Cir. 1976); *Cordingley v. Allied Van Lines, Inc.*, 563 F.2d 960 (9th Cir. 1977). Moreover, whether the notice of disallowance was proper or legally correct is irrelevant. *Cordingley v. Allied Van Lines, Inc.*, supra; *John Morrell & Co. v. Chicago, Rock Is. & Pac. R. R.*, 495 F.2d 331 (7th Cir. 1974). The critical question being simply whether the carrier has provided the claimant with "clear, final and unequivocal" notice that the claim has been disallowed. *Polaroid Corp. v. Hermann Forwarding Co.*, supra, 541 F.2d at 1012; *Cordingley v. Allied Van Lines, Inc.*, supra. Instantly, we hold that the Penn Central letter of January 21, 1972 constituted a "clear, final and unequivocal" notice that Cumberland's claim had been disallowed.

To reiterate, the concluding paragraph of the January 21 letter reads:

"Under these circumstances we must invoke Sec. 1(b) [sic] of the bill of lading contract as an act or default of the shipper and have no alternative but to advise *payment of claim is respectfully disallowed.*" (Emphasis added.)

It is difficult to conceive what could be more "clear, final and unequivocal." In addition, when Cumberland requested that Penn Central reverse its decision on the grounds that it was based on mistaken information, Penn Central replied by letter on February 3, 1972 that it was adhering to its declination of January 21, 1972.

Cumberland nevertheless contends that the January 21 letter did not constitute a clear, definite and unequivocal notice of disallowance. Indeed, Cumberland and the lower court share the view that the claim was not effectively disallowed until November 6, 1972, when Penn Central wrote in relevant part:

"We have conducted a very thorough investigation of the claim and it has been given serious review of the facts developed. However, *we are still* of the opinion that rail carrier liability does not exist and *reiterate our two previous declinations of the claim.*" (Emphasis added.)

The court below held that this letter indicated that Penn Central "had reopened investigation and reconsidered the claim." We disagree. In our opinion, this letter merely confirms the January 21 disallowance and admits no inference that Penn Central had subsequently changed its consistent position that Cumberland's claim had, in fact, been disallowed. Cf. *Polaroid Corp. v. Hermann Forwarding Co.,* supra. Cumberland's position that the November 6 letter indicates that Penn Central had reopened its investigation because it was in response to Cumberland's letter of June 15 suggesting that the January 21 disallowance was based on a material factual mistake, is untenable for several reasons. In the first place, the so-called mistaken information, namely, Penn Central's belief that it was not given an opportunity to inspect the damaged freight prior to unloading, had previously been brought to its attention by Cumberland's general manager on January 27, 1972. Nevertheless, a Penn Central official responded on February 3 that ". . . I must maintain our declination of January 21." In any event, as earlier noted, the question of whether a carrier's disallowance is proper or legally correct is simply irrelevant to the issue under consideration. *Cordingley v. Allied Van Lines, Inc.,* supra; *John Morrell & Co. v. Chicago, Rock Is. & Pac. R. R. Co.,* supra. Lastly, and perhaps most importantly, to conclude that the November 6 letter indicated that the unequivocal disallowance of January 21 had been revoked or reconsidered, would ignore the substantial body of law hold-

ing that subsequent correspondence or negotiations between the parties cannot toll the two-year limitation period once a legally effective disallowance has been tendered. See, e. g., *John Morrell & Co. v. Chicago, Rock Is. & Pac. R. R. Co.,* supra; *B. F. Goodrich Tire Co. v. Louisville & Nashville R. R. Co.,* 439 F.Supp. 363 (S.D.N.Y.1977); *Holford v. Louisville & Nashville R. R. Co.,* 266 F.Supp. 408 (W.D.Tenn.1967); *L. M. Kirkpatric Co. v. I. C. R. Co.,* 190 Miss. 157, 195 So. 692 (1940).

In conclusion, we find that the letter of January 21, 1972 is a "clear, final and unequivocal" notice of disallowance which triggered the two year and one day statute of limitations set forth in the bill of lading and, therefore, the institution of the instant action on August 1, 1974, was time-barred.

Judgment reversed and the matter is remanded with directions that judgment be entered in favor of the defendant-appellants.

PRICE, J., files a dissenting statement.

HOFFMAN, J., did not participate in the consideration or decision of this case.

PRICE, Judge, dissenting:

I would affirm on the opinion of the lower court.